Bobby Ray KINES, Petitioner, Appellant,

v.

Fred BUTTERWORTH, et al., Respondents, Appellees.

Ronald ST. PIERRE, Petitioner, Appellant,

v.

Fred BUTTERWORTH, et al., Respondents, Appellees.

Nos. 81–1325, 81–1350.

United States Court of Appeals, First Circuit.

Argued Sept. 17, 1981.

Decided Dec. 28, 1981.

Certiorari Denied May 17, 1982. See 102 S.Ct. 2250.

---

Robert Sheketoff and Bernard Grossberg, Boston, Mass., with whom Norman S. Zalkind, Boston, Mass., by appointment of the Court, and Zalkind & Zalkind, Boston, Mass., were on brief, for petitioners, appellants.

Alexander G. Gray, Jr., Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bel-

lotti, Atty. Gen., Boston, Mass., was on brief, for respondents, appellees.

Before COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, MURRAY,* Senior District Judge.

FRANK J. MURRAY, Senior District Judge.

Appellants in these two related cases appeal the district court's dismissal of their petitions for habeas corpus relief brought pursuant to 28 U.S.C. § 2254. Appellants were indicted for mayhem and assault and battery by means of a dangerous weapon and, after conviction of these charges by a jury in the Superior Court of Massachusetts, were sentenced to concurrent three-to ten-year terms to be served at the Massachusetts Correctional Institution (M.C.I.) at Walpole from and after sentences previously imposed. After unsuccessful appeals to the Massachusetts Supreme Judicial Court, *Commonwealth v. St. Pierre*, 377 Mass. 650, 387 N.E.2d 1135 (1979), appellants filed these petitions in the federal district court.

The grounds of relief sought are that their respective federal constitutional due process rights to a fair trial in the Superior Court were violated when appellants' access before trial to potential witnesses, certain corrections officers at M.C.I. at Walpole, was prevented by a Massachusetts State Police Trooper, and that their rights [1] were violated by rulings of the trial judge made during trial. In the district court the parties waived an evidentiary hearing and submitted the cases to a magistrate on the transcript of the state court proceedings and on certain portions of the state court record.[2] After a hearing, the magistrate made recommendations to the district judge for disposition of the petitions. The district judge declined to adopt the recommendation that the petitions be granted on the witness-interference issue. The judge found that appellants were not prejudiced by any governmental misconduct on the part of the state trooper which may have gone uncorrected, and accepted the magistrate's recommendation on all other grounds. Accordingly, the district court dismissed the petitions on all grounds.

In this appeal appellants argue that the state trooper had no justification to give instructions to the corrections officers not to talk with defense counsel, and that such interference with counsel's opportunity to talk with the corrections officers constituted a denial of due process of law, citing *United States v. Nardi*, 633 F.2d 972, 977 (1st Cir. 1980), and *Gregory v. United States*, 369 F.2d 185, 188 (D.C.Cir.1966), *cert. denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969). They also argue that they were seriously prejudiced in their attempt to properly prepare their defense. The respondent concedes that the state trooper improperly instructed the corrections officers. It is the respondent's position, however, that as appellants have shown no prejudice to them resulting from the actions of the state trooper, the petitions for habeas corpus on this ground should be dismissed.

---

* Of the District of Massachusetts, sitting by designation.

1. The other grounds alleged by appellants are:
   (a) their due process rights were violated when the trial court refused to allow impeachment of the victim, William Reilly, by prior inconsistent statements;
   (b) their due process rights were violated when the trial judge refused to allow appellants to present further evidence following the Commonwealth's rebuttal;
   (c) their rights to a fair trial were violated when the trial court refused to declare a mistrial based on prosecutor's closing argument.

2. The submitted portions of the state court record included:
   (1) Affidavit Of Robert Sheketoff In Support Of Motion To Dismiss Due To Prosecutorial Misconduct; (2) Defendant's Motion For A Copy Of The Suppression Hearing Or For The Stenographer To Be Called To Testify; (3) Affidavit Of Robert Sheketoff In Support Of Defendant's Motion For A Copy Of The Transcript Of Suppression Hearing Or For The Stenographer To Be Called To Testify; and (4) Grand Jury Minutes.

I

The equal right of the prosecution and the defense in criminal proceedings to interview witnesses before trial is clearly recognized by the courts. *United States v. Scott*, 518 F.2d 261, 268 (6th Cir. 1975); *United States v. Matlock*, 491 F.2d 504, 506 (6th Cir.), *cert. denied*, 419 U.S. 864, 95 S.Ct. 119, 42 L.Ed.2d 100 (1974); *Callahan v. United States*, 371 F.2d 658, 660 (9th Cir. 1967). No right of a defendant is violated when a potential witness freely chooses not to talk; a witness may of his own free will refuse to be interviewed by either the prosecution or the defense. *United States v. Scott, supra* at 268; *Byrnes v. United States*, 327 F.2d 825, 832 (9th Cir.), *cert. denied*, 377 U.S. 970, 84 S.Ct. 1652, 12 L.Ed.2d 739 (1964). However, when the free choice of a potential witness to talk to defense counsel is constrained by the prosecution without justification, this constitutes improper interference with a defendant's right of access to the witness. Justification on the part of the prosecution to interfere with that right can be shown only by the clearest and most compelling considerations. *Cf. Dennis v. United States*, 384 U.S. 855, 873, 86 S.Ct. 1840, 1850, 16 L.Ed.2d 973 (1966).

Appellants' claim that governmental interference with their access to witnesses during the investigative stage preceding the state court trial denied them due process of law presents the limited issue whether they received in the state court an essentially fair trial in the federal constitutional sense. "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941). Cases which have held that the defendant was denied due process when his access to witnesses before trial was obstructed by the prosecution follow: *Gregory v. United States, surpa* at 188; *United States v. Tsu-*

*tagawa*, 500 F.2d 420 (9th Cir. 1974); *United States v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971); *Hernandez v. Nelson*, 298 F.Supp. 682 (N.D.Cal.1968), *aff'd*, 411 F.2d 619 (9th Cir. 1969). The issue of prosecutorial interference with witnesses was raised in the cases which follow, and the courts for various reasons declined to find that defendant's right to a fair trial was violated. *United States v. Nardi, supra; United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *Salemme v. Ristaino*, 587 F.2d 81 (1st Cir. 1978); *United States v. Hyatt*, 565 F.2d 229 (2d Cir. 1977); *United States v. Jones*, 542 F.2d 186 (4th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976).

Mindful that a defendant, when claiming improper denial of access to a potential witness on due process grounds, must make a showing of more than merely the witness' inaccessibility, *United States v. Scott, supra* at 268, we turn to examine the record as a whole to assess the effect on the state court trial of the improper instructions given by the state trooper. A summary of the relevant facts and procedural history follows. On August 24, 1976, shortly before 2 P.M., William Reilly, an inmate at M.C.I. at Walpole occupying a cell on tier one of block ten, suffered injury when the open solid steel outer door of his cell was slammed against his left arm extended through the locked inner grille door. He had been assigned to the cell the preceding day. He was taken to the Lemuel Shattuck Hospital where he underwent an operation. A day or two later, he gave a written statement to the state trooper, the chief investigating officer for the Commonwealth, identifying the appellants as the men who had assaulted him by means of the door. On August 24 appellants were inmates at M.C.I. at Walpole serving sentences for other crimes, and were assigned to cells in block ten. The state trooper had exhibited to Reilly an array of photographs at the interview when he made the identification. The state trooper prepared a written report after interviewing Reilly and

several corrections officers who had been on duty on the day of the injury, and after examining tier one and official documents at the prison. Statements of the corrections officers were not reduced to writing in discoverable form.

When defense counsel attempted to interview five corrections officers who were potential witnesses, counsel learned that the state trooper had instructed the officers not to talk. Counsel thereupon moved pretrial to dismiss the indictments. The trial judge denied the motion and instructed the prosecutor to advise the corrections officers, on the judge's authority, of their right to talk to defense counsel "as they wish or not wish". The prosecutor later reported that he had given the court's instructions to the corrections officers. However, the officers still declined to talk to counsel for the defense. A motion was then presented to the trial judge for "an Order requesting the Commonwealth to tell the [corrections officers] to speak to [defense counsel] so that we could know what their testimony is going to be before trial ...". The judge denied the motion stating he saw no need of taking further action.

At the trial the prosecution called eight witnesses: five corrections officers, Reilly, a medical expert and the state trooper. Only Reilly identified appellants as his assailants on August 24. The five corrections officers who testified had declined before trial to talk with defense counsel. None of these officers testified that he was an eyewitness to the incident when Reilly was injured, and none testified that he was in sight of tier one of the cell block when the incident occurred. One of the officers, Geiss, testified that about 2 P.M. he heard muffled yelling and the volume of sound of radios and T.V.'s "go up"; that he went to the head of the tier and talked with inmate Gordon O'Brien; that he then went to the office and returned with other officers; that with another officer he entered the tier where he saw the appellants and O'Brien out of their cells; that Kines was wearing only a towel; that at Reilly's cell the solid outside door was closed, there was blood on the door jamb, the inside door had

blood on it, and Reilly was lying down with his arm bleeding. Geiss testified that five minutes elapsed from the time his attention was first attracted by the noises on the tier until he saw Reilly lying in his cell. Reilly testified that the time lapse was about fifteen minutes from the time of his injury to the arrival of the first corrections officer (Geiss).

All five corrections officers were cross-examined by defense counsel. Discovery proceedings had produced for the defense the grand jury minutes and the state trooper's report, and counsel had secured information, according to an affidavit, from inmates and corrections officers. Defense counsel had instigated a pretrial suppression hearing on a challenge to the photographs displayed by the state trooper to Reilly, and had opportunity to examine witnesses called to testify at the hearing. The defense called nine witnesses at the trial: eight inmates and a corrections officer (the latter called to impeach the victim's testimony that he had never known appellant St. Pierre prior to the incident on the tier). The testimony from these witnesses, in addition to the testimony of the corrections officer, tended to show requests by Reilly to inmates Johnson and O'Brien to inflict injury to his arm, and, circumstantially, that Reilly feared for his life in block ten and sought to injure himself so he might be transferred.

■ In light of the foregoing and the transcripts of the suppression hearing and trial, we address the appellants' argument that they were seriously prejudiced in preparing their defense because they were denied access to the corrections officers. At the outset, we note that appellants do not call to our attention any specific prejudice resulting from non-access. *See Salemme v. Ristaino, supra* at 87–88. Neither of the appellants claimed surprise at the testimony of any corrections officer at the trial or in the appeal to this court. From the sources of information they had before trial—the grand jury minutes, the state trooper's report, and the statements of certain in-

mates—there was nothing to indicate that any corrections officers were eyewitnesses to the incident involving the victim's injury, and nothing occurred at trial to suggest that they were eyewitnesses. No request by defense counsel was made of the court for opportunity to interview the corrections officers after conclusion of their direct testimony and before their cross-examination. The cross-examination of each corrections officer appears thorough. The defense had the benefit of testimony given at the suppression hearing, where defense counsel called as witnesses one of the corrections officers; the victim, Reilly; and the state trooper. From the victim was elicited his version of the claimed assault and battery as well as testimony of his identification of the appellants as his assailants. From the other two witnesses the appellants drew testimony concerning the photographic identification. All three of these witnesses testified subsequently at the trial.

In surveying the record as a whole we can find nothing significant that occurred at the trial which resulted from non-access to the corrections officers before trial, and nothing that unfairly affected or handicapped appellants in preparation for trial. Denial by the trial judge of the motion to order the prosecution to direct the correc-

tions officers to talk with defense counsel before trial did not violate any right of appellants. Such order, if entered, would have improperly denied the witnesses their freedom of choice not to talk. As we find no instances of actual prejudice, we reject appellants' claim of prejudice. Upon our consideration of the record as a whole, we find appellants' claim for relief on due process grounds was properly denied in the district court.[3]

## II

Appellants contend the district court erred by finding that they had not raised in the state court the constitutional issues grounded on the trial court's refusal to permit appellants to offer evidence of Reilly's prior inconsistent statements and certain surrebuttal testimony. We granted leave to both parties at the conclusion of the hearing before us to submit copies of their briefs presented to the Massachusetts Supreme Judicial Court (SJC),[4] on appellants' representations that their constitutional claims had been raised in that court, and those briefs have become part of the record on appeal.

In their arguments, appellants draw our attention to matters included in their SJC brief[5] and contend that on the

---

3. The case of appellants is distinguishable from *Gregory v. United States*, 369 F.2d 185 (D.C. Cir.1966), *cert. denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969), a capital case of first-degree murder on which they rely. There the prosecutor's instructions to eyewitnesses to the homicide not to talk to defense counsel unless the prosecutor was present were held to constitute a denial of fair trial in that defense counsel was denied opportunity for access to actual eyewitnesses to the crime and the prosecutor's acts were "... unquestionably a suppression of the means by which defense could obtain evidence". *Id.* at 189. Appellants also rely upon *United States v. Nardi*, 633 F.2d 972 (1st Cir. 1980); however, the *Nardi* court's finding that the witness chose of his own accord to talk with defense counsel only in the presence of the prosecutor lends no support to appellants' case.

4. Appellants submitted their brief which was addressed to:

"Commonwealth of Massachusetts, Appeals Court for the Commonwealth". In the letter

transmitting the brief, counsel for appellants stated that "by agreement of the parties ... briefs, submitted to the Supreme Judicial Court" were "enclosed".

5. The arguments were captioned as follows:

I. THE TRIAL COURT VIOLATED THE DEFENDANTS' RIGHTS TO DUE PROCESS OF LAW BY REFUSING TO ALLOW THEM TO IMPEACH THE COMMONWEALTH'S KEY WITNESS BY PRIOR INCONSISTENT STATEMENTS ON TESTIMONY THAT WAS CENTRAL TO THE ISSUES ON TRIAL.

II. THE TRIAL COURT VIOLATED THE DEFENDANTS' RIGHTS TO A FAIR TRIAL BY REFUSING TO PERMIT THEM TO PRESENT FURTHER EVIDENCE FOLLOWING THE COMMONWEALTH'S REBUTTAL EVIDENCE.

On issue I, appellants cited *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), for the proposition that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own

record and argument before it that court had fair opportunity to consider the issues of exclusion of prior inconsistent statements of Reilly and surrebuttal testimony in a federal constitutional context. Before a petition for habeas corpus will lie, the prisoner must have exhausted his state court remedies. 28 U.S.C. § 2254(b); *ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). The exhaustion rule requires that the prisoner present the state court with the same claim he urges upon the federal court. "The question here is simply whether, on the record and argument before it, the Massachusetts Supreme Judicial Court had a fair opportunity to consider the ... claim and to correct that asserted constitutional defect...." *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). We think that the arguments presented to the state court in appellants' brief provided that court with fair opportunity to consider the constitutional issues presented, although the court did not rule upon them in its decision. We hold that appellants exhausted their state court remedies, and upon our analysis of appellants' constitutional claims we find no ground for granting the habeas corpus relief sought.

**A.** *Impeachment by prior inconsistent statements.* The prosecution called Reilly as a witness at the trial, and he was cross-examined by counsel for each appellant. In direct examination Reilly testified that Kines came to his cell several times to talk and commented on both the watch Reilly was wearing and the scar on Reilly's hand; on the third visit, Kines asked to

have a closer look at the scar and Reilly put his hand through the inner grille door, whereupon Kines grabbed the wrist; and it was then that the outer door was slammed. On cross-examination Reilly said Kines had asked to see both the watch and the scar, and when Reilly put his hand through the door, it was in response to Kines' request to see the scar. He admitted that in his written statement he stated Kines asked to see the "stitches" on his hand. He further testified that he told Kines the stitches had been removed and Kines then asked to see where they had been, and it was then that Reilly put his hand through the door and Kines grabbed it. He also said that at the suppression hearing he testified that Kines commented on both the watch and the stitches. Reilly later added "... I don't believe I was even asked about the stitches. I was asked if he had wanted to look at the watch and I replied he did". He testified he may have mentioned both the watch and the scar at the suppression hearing.

After appellants were unsuccessful in extracting from Reilly the admission that he mentioned only the watch during his testimony at the suppression hearing, they moved orally, and later in writing before resting their cases, for a copy of the transcript of the suppression hearing or, in the alternative, that the stenographer be called as a witness.[6] The trial judge denied the motions and appellants saved exceptions to the ruling.

We agree with the Supreme Judicial Court that the statements offered through the stenographer were not merely collateral

---

defense". On issue II, there was citation to *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), for the proposition that the "right to present ... witnesses to establish a defense is a fundamental element of due process of law". After arguing on issue I that the "truthfulness of Reilly's testimony was the key element in the prosecution's case, *compare Davis v. Alaska*, 415 U.S. 308, 317, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)," appellants concluded their argument by asserting "the trial court abused its discretion and denied the defendants due process of law". On this issue, the Commonwealth concluded its argument by asserting that the trial

court's refusal to permit appellants to present prior inconsistent statements, if it "could conceivably be considered ... constitutional error, ... it is ... harmless beyond a reasonable doubt". On issue II, appellants concluded their argument by contending that by refusing to permit appellants to present additional evidence "the trial court abused its discretion ... and thus denied the defendants a fair trial".

**6.** Reilly's testimony at the suppression hearing, according to the stenographic transcript, was that he put his hand through the bars to show Kines the watch. There was nothing in the transcript about a scar or stitches.

but were admissible as proof by extrinsic evidence of prior inconsistent statements by Reilly which were relevant to how the injury to his arm occurred. However, Reilly had been examined and cross-examined extensively as to the details of what he said and what Kines said concerning the watch, scar and stitches, and what his actions were in response to Kines' requests for a "closer look" at Reilly's hand. The jury heard this testimony and was in a position to observe Reilly's vacillation, uncertainty and confusion on the watch/scar/stitches issue. The testimony sought to be presented through the stenographer would not have produced a narration of events not previously heard by the jury. It would have provided additional evidence of Reilly's vacillation and in that sense could be considered cumulative. This court cannot declare a belief that had the evidence been admitted, its influence upon the jury would likely have produced a different verdict; rather, it is our belief that exclusion of the evidence, if constitutional error, was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ B. *Exclusion of surrebuttal testimony.* The trial judge refused to permit appellants to present evidence to counter testimony presented by the Commonwealth in rebuttal.[7] Proffered testimony in surrebuttal of inmate Arthur Morrow that inmate Frank Stewart had a visitor on August 24, 1976, the day of Reilly's injury, was collateral to the issue of how Reilly's injury occurred. The proffered testimony did not challenge the contents of the official records introduced in rebuttal. Not only was the testimony on a collateral issue, but it was remote. We hold that the refusal to permit this testimony to be offered raises no federal constitutional question.

The second aspect of the rebuttal testimony was the testimony of Reilly that he did not have a conversation with inmate Gordon O'Brien in which he asked O'Brien to break his (Reilly's) arm. Appellants proffered the testimony of inmate Albert Therrien that when both Therrien and Reilly were in the hospital, Reilly told Therrien that "in fact ... he [Reilly] did have conversations with Gordon O'Brien, and that Gordon O'Brien had broken his arms". The trial court refused to permit Therrien to testify.

■ While rebuttal testimony which is offered to impeach the credibility of a key witness cannot ordinarily be viewed as collateral, *United States v. Uramoto*, 638 F.2d 84 (9th Cir. 1980), yet when the testimony is offered at a late stage of the trial in surrebuttal, and it is repetitious of evidence presented earlier to the jury, the trial judge's exercise of discretion excluding it should not be interfered with unless the ruling is so prejudicial that it necessarily prevents a fair trial. Here, inmate O'Brien had been called as a witness by appellants in their case in chief, and he testified that Reilly made two requests of him: (1) to cut his arm, and (2) to slam the door on his arm. Appellants did not call Therrien in their main case, as they might have done,[8] not only to impeach Reilly's credibility, but also to testify as to Reilly's statement to him regarding the cause of his injury. The jury had observed several attacks on Reilly's

---

**7.** Inmate Frank Stewart, called as a witness by appellant St. Pierre, testified on direct examination that around 12:15 P.M. on August 24, 1976, he had a visit from his cousin and his niece "in conjunction with" inmate Arthur Morrow, who was also his cousin. He further testified that upon his return to block ten from that visit "about an hour later" he saw inmates Kines, St. Pierre and O'Brien in the corridor of block ten and he saw Reilly lying in his cell, bleeding and crying for help. The Commonwealth's rebuttal evidence was that prison records did not reflect any visitors for Stewart on that date.

The Commonwealth also presented rebuttal evidence that Reilly denied having conversations with inmate Johnson and inmate O'Brien, contrary to the testimony each had given on direct examination.

**8.** Appellants did not raise any question during trial that they had no knowledge of what Therrien's testimony would be, if he were called as a witness in their case in chief, nor did they claim that Therrien was not available as a witness before proffer of his testimony was made in surrebuttal. Therrien was an inmate at M.C.I. at Walpole and, presumably, available as a witness at any time during trial.

**14**

credibility during his cross-examination and in direct examination of several inmates before Therrien's testimony was offered in surrebuttal. At the stage of surrebuttal the trial judge could reasonably have concluded that the issue of credibility had been adequately exposed to the jury, and on that issue the proffered testimony of Therrien was cumulative. While the judge might have permitted the testimony to be presented we do not find that the ruling excluding the testimony was fatal to the defense, or demonstrated any lack of that fundamental fairness essential to a fair trial. There was no error in the district court's dismissal of the petitions.

*Affirmed.*