**STATE of Minnesota, Appellant,**

v.

**Gordon Allen FRATZKE, Respondent.**

**No. 82–899.**

Supreme Court of Minnesota.

Oct. 6, 1982.

Warren Spannaus, Atty. Gen., St. Paul, James A. Lavoie, County Atty., Milaca, for appellant.

Daniel A. Eller, St. Cloud, C. Paul Jones, Public Defender, and Mollie G. Raskind, Asst. Public Defender, Minneapolis, for respondent.

SIMONETT, Justice.

This is a pretrial appeal by the state pursuant to Minn.R.Crim.P. 29.03, subd. 1, from an order of the district court disqualifying the Mille Lacs County Attorney and his staff from prosecuting defendant for first-degree murder and aggravated robbery because defendant's attorney has indicated that he plans to call the county attorney as a defense witness to impeach the testimony of the state's key witness. We reverse and remand for trial.

Defendant has been indicted for first-degree murder and aggravated robbery for the murder and robbery of a rural Mille Lacs County resident on February 17, 1982. It appears that the state's key witness against defendant will be Jeffrey Lucking, a friend of defendant who told the authorities that he was with defendant on February 17 and witnessed the killing.

At a pretrial hearing defense counsel moved to disqualify the county attorney and his staff because he planned to call the county attorney as a defense witness at trial to question him about the circumstances surrounding the interrogation of Lucking

on March 3. Present during the entire interrogation of Lucking were a Bureau of Criminal Apprehension agent, the county attorney, and an assistant county attorney. A deputy sheriff was present during part of the interrogation. The BCA agent conducted the first part of the interrogation, and the county attorney primarily conducted the rest of the interrogation. The statement by Lucking was taped and has been transcribed.

In granting the motion to disqualify the county attorney and his staff, the trial court relied on the "advocate-witness rule," which generally requires the removal of an attorney from a case if the attorney plans to be a witness for his client.

The advocate-witness rule is codified in the Code of Professional Responsibility, Canon 5, EC 5–9, DR 5–101 and DR 5–102 (1980). The advocate-witness rule provides, with some exceptions, that an attorney should not participate in a trial as an attorney if the attorney is likely to be called as a witness for his client. The rule does not, however, contemplate that a party can force the disqualification of his opponent's attorney simply by calling him as a witness or stating that he intends to call him as a witness. This is made clear by a note to DR 5–102(B) in the official amended text of the Code of Professional Responsibility, citing *Galarowicz v. Ward,* 119 Utah 611, 620, 230 P.2d 576, 580 (1951), which states that this rule "was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel." Model Code of Professional Responsibility, Canon 5, n. 31 (1980). Similarly, it appears that nothing in the proposed Model Rules of Professional Conduct would allow for the easy disqualification of an opponent's attorney simply by calling him as a witness. *See* Model Rules of Professional Conduct, Rule 3.7 (Proposed Final Draft 1981).

Standards Relating to the Prosecution Function § 3.1(f) (1971) provides:

The prosecutor should avoid interviewing a prospective witness except in the presence of a third person unless the prosecutor is prepared to forego impeach-

ment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present his impeaching testimony.

The commentary states:

One of the chief advantages urged in behalf of the separation of barristers and solicitors in the English legal profession is the general rule of avoidance of pretrial contact with witnesses by the advocate. This permits the advocate to maintain the stance in court of one who has not confronted the witness before, except in some situations where he may be present while the solicitor interviews the witness.

Two problems can arise in relation to possible impeachment. The first arises out of a prosecutor's interview with the "friendly" witness. The second relates to the need to interview witnesses likely to be called by the defense so that the prosecutor will be better able to conduct cross-examination or to decide whether to cross-examine at all. The "friendly" witness is likely to be cooperative in giving and signing a statement, and the problem of impeaching him will arise only in the unusual situation when the witness' testimony varies from his pretrial statement and takes counsel by surprise. That situation lies within the discretion of the trial court and impeachment of one's own witness, except by a written and signed statement, is rare.

The more frequently encountered problem is impeachment of an adverse witness whose testimony varies from what he has given to the prosecutor before trial. It is here that there may be need to conduct interviews of witnesses with a third person present, since hostile witnesses do not often sign written statements for opposing counsel. Use of a third person is virtually the only effective means of impeaching a witness. Assuming a court would permit it, a prosecutor is in a difficult situation if he must seek leave to withdraw and substitute other counsel so that he might take the stand to relate what he claimed the adverse witness had said to him.

The Code of Professional Responsibility takes a firm position that a lawyer should avoid testifying in court when he is the advocate. ABA Code DR 5–102. "Although a zeal as a lawyer might not influence his testimony as a witness, an ever critical public is only too apt to place such a construction upon it. A lawyer should avoid not only all improper relationships but should otherwise, in order to maintain the profession in public confidence and esteem, avoid all relationships which may appear to be improper." ABA Comm. on Professional Ethics, Opinions, No. 50 (1931). . . .

After written statements are secured by investigators, it is proper under our system, and indeed wise for the prosecutor, to interview such witnesses personally, not only to verify the investigator's report but to acquaint himself with the personality of the witness so as to be aware how the witness will react on the stand. Here again the prosecutor should take the precaution of having a third person present. The use of investigators in dealing with witnesses avoids much of the potential danger in this area.

Nothing in this section or in the commentary suggests that a defense counsel can force the disqualification of a prosecutor simply by stating that he plans to call the prosecutor as a witness or by actually calling him as a witness.

■ Cases dealing with the specific subject of the prosecutor as a witness in a criminal case are collected in Annot., 54 A.L.R.3d 100 (1973). It appears from this annotation that generally if a prosecutor plans to testify *for the state* in a prosecution of a defendant, the prosecutor should withdraw from the case. Courts, however, have made exceptions, as where the testimony of the prosecutor will relate only to a *formal matter about which there is no dispute.* As stated in the annotation, the few courts that have addressed the issue have indicated generally that a defendant may not force the disqualification or removal of a prosecutor from the case by announcing plans to call the prosecutor. Annot., 54 A.L.R.3d 100, §§ 2(a), 16 (1973).

One such case is *People v. Dist. Ct.,* 192 Colo. 480, 560 P.2d 463 (1977). That was a prosecution for perjury of one Sandoval in responding to questions put to him by the prosecutor when he testified before the grand jury. Sandoval moved to dismiss the prosecutor, claiming that he intended to call the prosecutor to establish the "meaning ... language and contents" of the questions at the grand jury hearing. The trial court granted the motion. The Colorado Supreme Court, granting prohibition, stated that the mere fact that the prosecutor had interviewed witnesses and participated in the investigation of the case "alone cannot be a sufficient basis to prevent the execution of his office as prosecutor because it would allow prosecution only by unprepared counsel." 560 P.2d at 464. The court did not rule absolutely that a defendant could never obtain the removal of a prosecutor from a case in which the defendant planned to call the prosecutor as a witness, but it stated that before defendant could obtain such relief he would have to establish that the role of the prosecutor as a witness would infringe upon the defendant's right to a fair trial.

Other cases dealing similarly with the issue of disqualification of a prosecutor whom the defendant intends to call or does call as a witness include *United States v. Maloney,* 241 F.Supp. 49 (W.D.Pa.1965); *Riboni v. Dist. Ct.,* 196 Colo. 272, 586 P.2d 9 (1978); *State v. Mercer,* 625 P.2d 44 (Mont. 1981); *People v. Arabadjis,* 93 Misc.2d 826, 403 N.Y.S.2d 674 (1978).

In this case, we believe that the trial court erred in holding that defendant had established the necessity of removing the county attorney and his assistants as prosecutors. In fact, it appears that the county attorney will not likely be a necessary witness and that his testimony at best may be cumulative, there being at least two other people (one a BCA agent, the other an assistant prosecutor) who witnessed the entire interrogation of Lucking. Further, the interrogation was taped and transcribed.

If defendant nonetheless does try to call the prosecutor at trial, the decision whether to allow the examination will be in the discretion of the trial court. *See* Minn. R.Evid. 403. *Compare State v. Smith,* 264 Minn. 307, 119 N.W.2d 838 (1962); *State v. McClendon,* 172 Minn. 106, 214 N.W. 782 (1927); and Annot., 54 A.L.R.3d 100 § 15 (1973).

Since defendant has not met his burden of establishing the need to remove the county attorney, we see no need to address the issue of whether disqualification of the county attorney would also require disqualification of his entire staff. We note, however, that there is support in the cases for the view that removal of one prosecutor who will be a witness does not necessarily require disqualification of his entire staff. *See People v. Superior Court,* 86 Cal.App.3d 180, 150 Cal.Rptr. 156 (1978), and *State v. Martinez,* 89 N.M. 729, 557 P.2d 578 (1976). Compare Code of Professional Responsibility, DR 5–101 and DR 5–102 (1980) with Model Rules of Professional Conduct, R. 3.7(b) (Proposed Final Draft 1981).

Reversed and remanded for trial.