UNITED STATES of America, Appellee,

v.

James J. BITTNER, Appellant.

No. 83–1312.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1983.

Decided Feb. 24, 1984.

Rehearing Denied April 16, 1984.

George P. Lynch, Chicago, Ill., for appellant.

Richard C. Turner, U.S. Atty., Joseph S. Beck, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before BRIGHT, JOHN R. GIBSON and FAGG, Circuit Judges.

BRIGHT, Circuit Judge.

James Bittner appeals from his conviction for kidnapping in violation of 18 U.S.C. § 1201(a)(1) (1976). He argues 1) that the district court[1] erred in denying his motion to transfer the case from the Southern District of Iowa to the Northern District of Illinois; 2) that the Government impermissibly interfered with his right to interview witnesses prior to trial; 3) that the Government impermissibly suppressed evidence from him that was favorable to his defense; 4) that the district court improperly curtailed cross-examination of the complaining witness; and 5) that the evidence is insufficient to support the verdict. We reject each of Bittner's arguments and, accordingly, affirm his conviction.

I. *Background.*

On July 12, 1982, Ms. J. Brown, an eighteen-year-old summer school student at a college in north Chicago, was sunbathing on the campus of another college several blocks from her apartment. After she had been sunbathing for a couple of hours, she noticed the defendant Bittner rapidly approaching her. Despite her attempts to roll away, Bittner grabbed her by the side and held her to the ground for about half a minute. He then released her, and she put a shirt and jeans on over her bathing suit.

Bittner then sat down on Brown's blanket and attempted to engage her in conversation. During the course of their conversation, he remarked that his twenty-two-month-old daughter had been sexually molested, and that he would shoot the man responsible. He told Brown that he had a

gun, and lifted his shirt to reveal a brown paper bag that appeared to contain a pistol tucked in his waistband. Bittner told Brown to help him find the man who had molested his daughter, and threatened to shoot her or anyone who might come to her aid if she called for help or attempted to escape.

Brown started to cry, and Bittner ordered her to gather her belongings and accompany him to his car. They walked through campus two to four blocks to the car. During this time Bittner held onto Brown and threatened her again. When Bittner got in the car on the driver's side, Brown got in unassisted on the passenger side, but testified that she did so because she was afraid.

Bittner and Brown left the campus and, after driving along several city streets, entered the southbound freeway to Chicago. At one point Brown noticed that the gas tank was almost empty, and, hoping to escape, she suggested that Bittner stop for gas. Bittner purchased some gas at a service station in south Chicago, but Brown did not escape. A short time later they also stopped near a tavern, but neither Bittner nor Brown got out of the car. Throughout this time Bittner threatened to shoot Brown if she did not cooperate.

Bittner and Brown then left Chicago and proceeded west on Interstate 80 to Iowa. During the drive he continued to threaten her. After a time, he ordered her to take off her bathing suit top and perform fellatio for him while he drove. After doing so for a time, she bit him and attempted to push him out of the car. Bittner then lost control of the car, and the car went into a ditch. Brown escaped and flagged down a passing motorist, who drove her to a local police station. The Iowa state police apprehended Bittner shortly thereafter and arrested him for driving while under the influence of alcohol. He did not have a gun when he was arrested, and the police found

---

1. The Honorable William C. Stuart, United States District Court for the Southern District of Iowa.

no evidence that he possessed a gun while driving the car from Illinois into Iowa.

On January 7, 1983, a jury found Bittner guilty of kidnapping Brown in violation of 18 U.S.C. § 1201(a)(1).

## II. *Discussion.*

### A. *Motion to Transfer.*

Bittner first challenges his conviction on the ground that the district court abused its discretion in denying his motion to transfer the trial from the Southern District of Iowa to the Northern District of Illinois. He argues that the Northern District of Illinois was the logical situs for the trial because both he and Brown reside in that area, his lawyer maintains an office and regularly practices there, most of the events surrounding the alleged kidnapping took place there, and the witnesses residing in Iowa added little to the Government's case. Moreover, Bittner contends that the court's denial of his motion to transfer irreparably harmed him. He claims to be a man of modest means, and that he could not afford to transport psychological experts and character witnesses from Chicago to testify on his behalf. In addition, Bittner argues that a jury consisting of residents from the Chicago area would be familiar with the area in which the kidnapping took place, and would therefore doubt Brown's claim that she was unable to escape from Bittner.

■ A reviewing court may not upset a trial court's ruling on a change of venue motion absent a showing that the trial court abused its discretion. *See United States v. Keuylian,* 602·F.2d 1033, 1038 (2d Cir.1979); *Dosek v. United States,* 405 F.2d 405, 408 (8th Cir.1968), *cert. denied,* 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969); *see also* Fed.R.Crim.P. 21(b) ("for convenience of the parties and witnesses, and in the interest of justice, the Court * * * *may* transfer the proceeding") (emphasis added). The evidence does not indicate that the district court abused its discretion in denying Bittner's motion and proceeding with the trial in Iowa. The alleged sexual acts, which were an integral part of the kidnap-

ping, occurred in Iowa, Bittner was arrested and was in custody in Iowa, the majority of the witnesses resided in Iowa, Bittner was able to retain local counsel in Iowa, and the court docket in the Southern District of Iowa was lighter than the docket in the Northern District of Illinois. *See United States v. Keuylian, supra,* 602 F.2d at 1038 (discussing factors to be considered in deciding motion for venue change). Although Bittner's residence in Chicago is one factor that weighs in favor of transferring the case to Illinois, it does not in itself entitle him to be tried in Illinois. *See United States v. McManus,* 535 F.2d 460, 463 (8th Cir.1976) (per curiam), *cert. denied,* 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977).

### B. *Interference with Bittner's Right to Interview Witnesses.*

Bittner also challenges his conviction on the ground that the Government impermissibly interfered with his right to interview witnesses. Prior to trial, FBI Agent Paul Fennewald advised Brown that she did not have to talk with Bittner's attorney. When Bittner's attorney sought to interview Brown, she declined to speak with him. Bittner argues that he needed to interview Brown in order to recall events he had forgotten due to his intoxication on the date of the kidnapping, and that Fennewald's actions impermissibly curtailed his right to investigate his case.

■ Although the prosecution and the defense have an equal right to interview witnesses in a criminal proceeding, the defendant's right of access is not violated when a witness chooses of her own volition not to be interviewed. *See United States v. Scott,* 518 F.2d 261, 267–68 (6th Cir.1975); *United States v. Long,* 449 F.2d 288, 295 (8th Cir.1971), *cert. denied,* 405 U.S. 974, 92 S.Ct. 1206, 31 L.Ed.2d 247 (1972). In this case, Brown merely exercised her right to refuse to speak with Bittner's attorney. Though the prosecution may not without justification interfere with a witness' free choice to speak with a defense attorney, *see Kines v. Butterworth,* 669 F.2d 6, 9 (1st Cir.1981), *cert. denied,* 456 U.S. 980, 102

S.Ct. 2250, 72 L.Ed.2d 856 (1982), it does not appear in this case that the prosecution impermissibly interfered with Brown's free choice. Rather, Agent Fennewald merely advised her of her right to decline interviews with Bittner's attorney. Contacts of this nature do not constitute an impermissible interference with the defendant's right of access to witnesses.[2]

### C. Suppression of Evidence Favorable to Bittner.

██ Bittner next argues that the Government violated his right to due process when it suppressed evidence favorable to his defense. Before trial, Bittner specifically requested from the Government a copy of all of Brown's written and recorded statements. Although the Government disclosed certain FBI reports several months before his trial, it did not disclose until the morning of his trial a transcript containing statements Brown made to law enforcement officials on July 13, 1982, the day after the alleged kidnapping.

Bittner contends that under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id.* at 87, 83 S.Ct. at 1197. Bittner argues that the transcript of Brown's July 13 interview which the Government failed to disclose contained material information that would have helped him prepare his defense. Specifically, Bittner claims that at the July 13 interview Brown made statements that he could have used to attack her credibility, to challenge her assertion that she accompanied him against her will, and to learn that she had expressed a willingness to take a lie-detector test. Bittner claims that because he first learned of these statements on the day of trial, he was unable to use them to investigate Brown's credibility and to take advantage of her offer to submit to a lie-detector test.

Although the prosecution violates the defendant's right to due process when it suppresses *Brady* material specifically requested by the defendant, in this case the Government in fact disclosed the transcript of Brown's July 13 interview. We believe that although Bittner first learned of Brown's statements on the morning of trial, he nevertheless had adequate time to review the statements and prepare his defense. Moreover, even assuming arguendo that the prosecution suppressed the transcript of Brown's interview, Bittner fails to demonstrate that the suppressed evidence "might have affected the outcome of his trial," as required under *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976).

### D. Cross-Examination of Brown.

██ Bittner also challenges the district court's ruling preventing him from cross-examining Brown about a sexual incident with a boyfriend against her will which had occurred three years earlier. After an evidentiary hearing, the district court found that evidence of the prior incident was more prejudicial than probative, and in any event, was not relevant to the alleged kidnapping. A trial court's discretion in controlling the scope of cross-examination will be overturned "[o]nly when there is a clear abuse of that discretion and an adequate showing of prejudice." *United States v. Brown*, 482 F.2d 1226, 1229 (8th Cir.1973). We do not believe that the district court abused its discretion in preventing Bittner from cross-examining Brown about the prior sexual incident.

### E. Sufficiency of the Evidence.

██ Lastly, Bittner challenges his conviction on the ground that the evidence is insufficient to show that he forcibly kid-

2. Bittner also argues that the Government improperly placed restrictions on his attorney's ability to interview Brown when it advised him that if Brown consented to an interview a government attorney should be present. Because Brown never consented to an interview with Bittner's attorney, we need not decide whether the Government could request to be present at such an interview.

napped Brown in violation of 18 U.S.C. § 1201(a). To demonstrate that Brown accompanied him voluntarily, Bittner argues that she did not flee or call for help, despite numerous opportunities to do so when they walked to his car, when the car stopped for traffic lights, and when they stopped at the filling station and the tavern. Bittner also points out that Brown's testimony that she did not feel a gun in his waistband when she hit his stomach with her head indicates that she knew he was unarmed and that she could escape. Further, Bittner claims that Brown could have escaped because she knew he was intoxicated. Bittner argues, therefore, that given Brown's numerous opportunities to flee or call for help, the evidence does not show that she was abducted against her will.

In considering Bittner's contention that the evidence is insufficient to support his conviction, we review the evidence in its entirety and in the light most favorable to the jury verdict. *See United States v. Manko,* 694 F.2d 1125, 1128 (8th Cir.1982), *cert. denied,* 459 U.S. 1219, 103 S.Ct. 1224, 75 L.Ed.2d 460 (1983); *United States v. Bierey,* 588 F.2d 620, 626 (8th Cir.1978), *cert. denied,* 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979). Under this standard, the record contains sufficient evidence for the jury to conclude that Bittner forced Brown to accompany him against her will. Shortly after Bittner first approached Brown, he told her that he had a gun tucked in his waistband, and he lifted his shirt to reveal a brown paper bag that appeared to contain a pistol. Throughout the episode, he threatened to shoot Brown or anyone who might come to her aid if she called for help or attempted to escape. Bittner also grabbed or held Brown when he first approached her and when he escorted her to his car. Although Brown testified that when she hit her head against Bittner's stomach she did not feel a gun in his waistband, the record does not indicate at what point during the incident she felt his waistband, and the jury could reasonably have concluded that she did so shortly before she escaped. Thus, considered in the light most favorable to the jury verdict, the evidence, in its entirety, is sufficient to support the inference that Brown did not have an opportunity to flee or call for help, and that she was abducted against her will.

III. *Conclusion.*

Accordingly, for the reasons set forth in this opinion, we affirm Bittner's conviction.