STATE of Minnesota, Respondent,

v.

Charles Paul MUSSEHL, Appellant.

No. C7–86–350.

Court of Appeals of Minnesota.

Dec. 2, 1986.
Review Granted Jan. 21, 1987.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Robert W. Kelly, Washington Co. Atty., Stillwater, for respondent.

Barry V. Voss, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Appellant Charles Mussehl was convicted of two counts of assault in the first degree, Minn.Stat. §§ 609.221, 609.11 (1984), two counts of burglary in the first degree, Minn.Stat. § 609.582, subd. 1(a), (b) and Minn.Stat. § 609.11 (1984), and one count of unlawful possession of a pistol, Minn. Stat. §§ 624.713, subd. 1(d) and 609.11 (1984). On appeal he raises several issues regarding claimed discovery violations which denied him a fair trial. We affirm.

## FACTS

Appellant's convictions stem from an incident which occurred around midnight on May 13, 1985. Appellant appeared in the attic of Jamie Van Guilder's townhouse in Oakdale, Minnesota. Van Guilder screamed and ran out of the house across the street to her neighbors, Brad Naylor and Gail Ripperger. While Ripperger called the police, appellant was asked what he was doing in Van Guilder's house. He replied that he had not been in her house, and that it was his house. Appellant started back to the house and Naylor told him to wait until the police arrived. Van Guilder screamed at Naylor not to let appellant return to her home as Van Guilder knew her children were still inside. Naylor put appellant on the ground several times and then appellant pulled out a knife and began stabbing Naylor.

Appellant headed towards Van Guilder's house again and Van Guilder, frightened that appellant was going in after her daughter, ran after him and jumped on his back. Appellant reached back and stabbed her in the back of her right leg and they both fell. Appellant got into a car and sped away. Meanwhile, a police officer responding to the call gave chase. Appellant was eventually apprehended. A loaded .45 pistol was recovered on Van Guilder's bathroom floor; the pistol had been purchased by appellant's brother a few weeks earlier.

Appellant lived in the adjoining townhouse and Van Guilder had seen appellant about eight times before. She testified that twice in the past week appellant stood on a nearby hill and watched her sunbathe. Naylor sustained five wounds, two to the neck, a deep wound to the left forearm, one to the armpit area and one to the back which penetrated the chest wall. The greater auriculor nerve in his neck was cut and permanently impaired. Van Guilder suffered from a cut to the peroneal nerve in her leg and at trial still wore a prosthetic brace.

Appellant was charged with two counts of attempted murder in the first degree, one count of attempted second degree murder, two counts of first degree assault, two counts of first degree burglary, and one count of unlawful possession of a pistol.

Several months prior to trial the prosecutor sent a letter to twelve prospective witnesses, which in part stated as follows:

\* \* \* \* \* \*

At a recent court hearing I was informed that the defendant intends to retain a private investigator to assist him in his defense. It may very well be that you will be contacted by either the investigator or the defendant's attorney, Barry Voss. *As an attorney I cannot ethically advise you not to cooperate with either the defense investigator or the defendant's attorney. The decision as to whether or not you wish to talk to either any defense investigator or the defendant's attorney is entirely up to you. You are not required to talk with them.* In this regard you should be aware that the statements the police prepared after interviewing you have been made available to the defendant and his attorney.

\* \* \* \* \* \*

*If you wish to talk to the defendant's investigator or his attorney I would request that you advise me and request that I be present. It is your right to request that the prosecutor or a police officer be present for any such interview. If a defense investigator or defense attorney does not like that, you can simply tell him you don't want to talk with him under those circumstances.*

\* \* \* \* \* \*

I would be interested to know if you are even contacted by a defense investigator or by the defense attorney.

(Emphasis added). At a pre-trial hearing defense counsel expressed concerns about the letter and on November 21, 1985 the prosecutor sent another letter which in part read:

\* \* \* \* \* \*

*The defendant's attorney, Mr. Barry Voss, has informed me that his investigator has contacted several witnesses and that at least one of those witnesses has told his investigator that because of what the county attorney said, the witness cannot talk to the defense investigator. That is incorrect. The decision as to whether or not you wish to talk with either the defendant's attorney or his investigator is entirely up to you. You are not required to talk with them any more than you are required to talk with me.* If an attorney in a case wants to subpoena a witness for trial he is entitled to do so. *Neither the prosecution nor the defense has any particular right to talk with the witnesses prior to trial although any such statements given by a witness must be disclosed to the opposing side.* There has been disclosure by both the prosecution and the defense in this case. Obviously, each attorney is ethically obligated to advocate zealously on behalf of his client, although the prosecutor has an additional duty to see that justice is done.

*If you wish to cooperate with Mr. Voss or his investigator in defending Mr. Mussehl you may talk with him. I would appreciate it if you decide to talk with the defense investigator that you request that either myself or a law enforcement officer be present. It is your right to have one of us be present for such an interview. If the defense investigator or attorney does not want to do that, you are entitled to refuse to talk with him.*

(Emphasis added).

Defense counsel moved to dismiss all charges or to remove the prosecutor on the ground that defense counsel had effectively been denied access to the witnesses. The trial court denied the motions.

During trial defense counsel claimed discovery violations and his motion to strike the testimony of two witnesses or require disclosure of the prosecutor's notes was denied.

## ISSUES

1. Did the trial court abuse its discretion in declining to dismiss the charges or remove the prosecutor on the ground the prosecutor had effectively denied defense counsel access to the witnesses based on his letters?

2. Did the trial court abuse its discretion in declining to strike the testimony of two witnesses or require disclosure of the prosecutor's notes?

## ANALYSIS

### I.

Defense investigator Mike Grostyan contacted six of the twelve prospective witnesses listed in the letters before the second letter was sent. The denial of access claim relates to four witnesses. Three of them, Gary Andrys, Bruce Huot and Larry John lived in one of the townhomes in the complex where Van Guilder and Naylor lived. Grostyan arrived at their house unannounced on November 4, 1985 and interviewed them jointly.

Andrys testified at trial that Grostyan asked him if his handwritten statement was correct and asked him more questions which Andrys answered. When asked what he had observed, Andrys declined to answer any more of Grostyan's questions. Andrys testified at trial that he understood that it was his right not to talk to Grostyan. He testified he did not think anyone else had to be present or that he had to call anyone if contacted by the defense.

Grostyan had two telephone conversations with David McWilliams for a total of five minutes. McWilliams told him the prosecutor's letter indicated that it was McWilliams' decision whether or not to be interviewed and that he did not refuse to be interviewed and was willing to set up an appointment. Grostyan never got back to McWilliams. McWilliams testified he would have submitted to an interview provided he could contact the county attorney's office first. The pre-trial judge, of course, decided the motion to dismiss without the benefit of the witnesses' testimony

and concluded that appellant had access to five of the six witnesses the investigator attempted to interview (all except McWilliams).

■ A witness in a criminal case has the right to refuse to be interviewed by either party. *United States v. Bittner*, 728 F.2d 1038, 1041 (8th Cir.1984); *State v. Reichenberger*, 289 Minn. 75, 182 N.W.2d 692, 696 (1970). The prosecutor may advise witnesses of this right. American Bar Association Standards for Criminal Justice, The Prosecution Function, Standard 3–3.-1(c) and Commentary (1980); *Bittner*, 728 F.2d at 1042. A prosecutor may request the opportunity to be present during a defense interview of the witness so long as the prosecutor's presence is not a condition of the interview. ABA Standards 3–3.1(c), Commentary at 3–38 to 3–39. A witness has the right to dictate the conditions under which he will submit to an interview, including the presence of the prosecutor. *United States v. Nardi*, 633 F.2d 972, 977 (1st Cir.1980).

Here the letters informed the witnesses that they were not required to speak with a representative from the defense and that the decision was for each of the witnesses to make. The prosecutor requested the opportunity for either himself or a police officer to be present. The letters neither advised the witnesses to decline interviews nor instructed the witnesses to speak unless a representative of the prosecutor was present. This is distinguishable from *Gregory v. United States*, 369 F.2d 185 (D.C.Cir.1966), *cert. denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969), the case relied on by appellant. In *Gregory* the prosecutor advised the witnesses not to talk to anyone unless he was present. The court held that such advice effectively denied defense counsel access to the witness except in the presence of the prosecutor, and consequently denied defendant a fair trial.

■ Further, to prevail appellant must show more than merely the witnesses' inaccessibility. *Kines v. Butterworth*, 669 F.2d 6, 9 (1st Cir.1981), *cert. denied*, 456 U.S. 980, 102 S.Ct. 2250, 72 L.Ed.2d 856 (1982). Appellant must show actual prejudice, a real, substantive impairment of his right to a fair trial. Appellant has not shown that *any* witness was inaccessible. The trial court did not abuse its discretion in refusing to dismiss the charges.

■ In addition, to the extent appellant still makes this contention, the trial court did not abuse its discretion in refusing to remove the prosecutor or to permit appellant to call him as a witness. A defendant may not remove a prosecutor by simply naming him as a potential defense witness. *State v. Fratzke*, 325 N.W.2d 10, 12 (Minn.1982). The letters here were transcribed and there was no need for the prosecutor to testify. No abuse of discretion has been shown. *Id.* at 13.

## II.

Minn.R.Crim.P. 9.01, subd. 1(1)(a) provides:

(1)(a) The prosecuting attorney shall disclose to defense counsel the names and addresses of the persons whom he intends to call as witnesses at the trial together with their prior record of convictions, if any, within his actual knowledge. He shall permit defense counsel to inspect and reproduce such witnesses' relevant written or recorded statements and any written summaries within his knowledge of the substance of relevant oral statements made by such witnesses to prosecution agents.

Minn.R.Crim.P. 9.01, subd. 3(1) provides: The following information shall not be discoverable by the defendant:

(1)(a) Opinions, Theories or Conclusions. Unless otherwise provided by these rules, legal research, records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the prosecuting attorney or members of his staff or officials or official agencies participating in the prosecution.

Appellant asserts he was denied due process by the nondisclosure of the substance

of interviews the prosecutor had with Jamie Van Guilder and Bruce Huot, and that they should have been stricken as witnesses because the prosecutor did not disclose their oral statements. Appellant claims that the "spirit" of the discovery rules was violated. The notes requested were not the witnesses' statements. Rather, they were handwritten notes of questions the prosecutor intended to ask the witnesses at trial based on the prosecutor's separate interviews with the witnesses. The trial court reviewed the notes, ruled they were not discoverable and denied appellant's motion to strike their testimony.

In *State v. Galvan,* 374 N.W.2d 269 (Minn.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1496, 89 L.Ed.2d 897 (1986), the supreme court ruled that:

> [i]f a prosecutor interviews a witness, the prosecutor's notes summarizing the witness' statement are not work product; if the notes contain the thoughts or opinions of the prosecutor, those parts of the notes may be withheld but the summaries of the witness' statement may not be withheld.

*Id.* at 270.

■ There is no indication the witness' statements here were reduced to writing and withheld. The prosecutor's potential questions reflect trial strategy and are not discoverable. Moreover, nondisclosure of oral interviews of witnesses is not a discovery violation absent a purposeful effort to avoid discovery. *State v. Crawford,* 394 N.W.2d 189 (Minn.Ct.App.1986).

Here there was no purposeful avoidance as full disclosure of discoverable material had been made and appellant had months to interview the witnesses. Appellant never sought to interview Van Guilder and chose not to ask Huot any details before trial concerning the events. No continuance to interview the witnesses was sought. In fact, appellant was permitted to question Van Guilder about the incident out of the hearing of the jury and she was impeached in cross-examination through questions showing that she had not told the

police or mentioned the sunbathing incident in her earlier signed statement.

In the case of Huot, the trial court also reviewed the prosecutor's notes and indicated that they did not appear to be a verbatim statement. Apparently, the prosecutor wrote out questions to ask the witnesses rather than taking notes of their statements during interviews because that is his preferred technique in questioning witnesses. In *Crawford* we indicated that the primary tool for discovering testimony is to interview the witnesses; defense counsel had sufficient opportunity to do so here.

■ Even if there were a technical discovery violation, the imposition of sanctions for discovery violations is within the sound discretion of the trial judge. *State v. Lindsey,* 284 N.W.2d 368, 373 (Minn. 1979). *See State v. Smith,* 367 N.W.2d 497, 502 (Minn.1985). Exclusion of a witness' testimony is a severe sanction. Appellant did not sustain prejudice; his claim that he was hampered in his cross-examination of the witnesses is not borne out by the record. Thus, trial court did not abuse its discretion in refusing to strike the testimony of Van Guilder and Huot.

## DECISION

Appellant's convictions are affirmed.