UNITED STATES of America, Appellee,

v.

Bruce Putnam MURDOCK, Appellant.

No. 87–5001.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1987.

Decided Aug. 19, 1987.
Rehearing Denied Sept. 17, 1987.

Rodney C. Lefholz, Rapid City, S.D., for appellant.

Ted L. McBride, Asst. U.S. Atty., Rapid City, S.D., for appellee.

Before ARNOLD, Circuit Judge, WRIGHT,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

This is a criminal prosecution by the United States against Bruce Putnam Murdock for violating 18 U.S.C. § 111. The indictment alleged that Murdock forcibly impeded and interfered with Elizabeth Gross, a Range Conservationist with the United States Forest Service, while she

---

* The Hon. Eugene A. Wright, Senior United States Circuit Judge for the Ninth Circuit, sitting

by designation.

was performing her official duties. Murdock was convicted and sentenced to one year's imprisonment and payment of $50.00 to the Special Victim's Assistance Fund. The District Court [1] suspended the jail term and placed Murdock on probation for two years. For reversal, Murdock argues (1) that he was denied a fair trial because he was prevented from interviewing Gross before trial and (2) that the Court erred in refusing to admit evidence or to propound a jury instruction on Murdock's theory that Gross was trespassing when the incident occurred. We affirm.

The Forest Service manages the Elk Mountain Ranger District, which covers a large area of federal land in Wyoming and South Dakota, primarily on the west side of South Dakota's Black Hills. Private ranchers can obtain permits from the Forest Service to graze their cattle on this land, and one of Gross's duties as a Range Conservationist was to enforce the permits. One way this is done is to "count on" cattle when they are moved from private to government land; this ensures that the number of cattle put onto government pastures is within permit limits.

In the summer of 1986, Murdock had leased some private land adjacent to the Basin Allotment of the Elk Mountain District, on which he kept some cattle (which he did not own). There apparently was no water available on his land, and it was necessary for the cows to be able to graze in the public land to reach water. There was also some confusion about whether he had a right to pasture the cattle on public land, because his permit, which was for 36 head of cattle, had expired at the end of 1985, and was in the process of being renewed. Gross was in charge of enforcing permits on the public land next to Murdock's pasture.

On June 25, 1986, before the permit was renewed, Gross found a large percentage of the permitted cattle on the Basin Allotment. After consulting with her supervisor, she informed Murdock on June 27 that the cattle on the Basin Allotment were in trespass and must be removed. They agreed that he would have the cattle off the Allotment by July 3. Then, on July 2, Gross received a note from Murdock that he wanted to put the cattle back onto the Allotment on July 6, which was a Sunday, at 6:00 a.m. Gross agreed, and arranged to be there then to count the cattle on.

In the afternoon of July 5, 1986, Gross went to the Allotment and found that 27 head of cattle were on public land. Because there were so many cattle already on the property, she could not be sure that the proper number of cattle would be counted on the next morning, and she decided to cancel the count-on. She was unable to contact Murdock that night to cancel the meeting, so she went to the Basin Allotment the next morning, arriving there at about 5:55 a.m. She saw Murdock on a motorcycle in his leased pasture, driving cattle towards an open gate at the boundary of the public land. The lead cows were close to the gate, so Gross drove her Forest Service jeep up to the fence, blocked off the gate, and jumped out of the jeep to wave the cows away and close the gate. Murdock drove up on his motorcycle, got into the jeep, and drove it away from the gate. While this was happening, Gross ran to the passenger side of the jeep and leaned in through the open window to try to pull the keys out of the ignition. Murdock resisted her and tried to roll up the window in the passenger door. At some point Gross jumped away from the jeep, and Murdock brought it to a stop about 150 feet away from the gate. He turned the engine off, opened the hood, and pulled the distributor wire off the distributor to disable the vehicle. Then he walked back towards the gate.

Gross ran to the jeep and, seeing the hood unlatched, opened it and saw the loose distributor wire. She reattached the wire and started the jeep. By this time, Murdock had returned to the jeep and, when Gross backed it up, she grazed Murdock's heel with a tire. Then she drove away from the scene.

---

1. The Hon. Richard H. Battey, United States District Judge for the District of South Dakota.

On the next day, Gross filed a report with the Forest Service about the incident. On the day after that, July 8, 1986, a Forest Service investigator interviewed Murdock, and he filed a report on the following day. Murdock was indicted on July 16, 1986.

While preparing for trial, Murdock's attorney drove from Rapid City, South Dakota, to Newcastle, Wyoming on October 15, 1986, to interview Gross. He did not have an appointment. When Gross learned that he wished to interview her, she told him she was not sure she should talk to him and wanted to ask her superiors. They told her to call the Assistant United States Attorney (AUSA) who was handling the case. Gross told Murdock's counsel this, and he placed the call to the prosecutor from her office and asked him to tell Gross that it was all right to speak to him. The AUSA replied that whether Gross consented to the interview was her own decision and that he would not advise her one way or the other. Murdock's lawyer then asked the AUSA whether he would advise Gross to talk to him if the AUSA could be present at the interview, and the AUSA said he would. They then scheduled an interview for the next week, and Murdock's attorney left.

On the day before the scheduled interview, Gross showed the AUSA and her superior, Phil James, the place on the Basin Allotment where the altercation had occurred. There she expressed some hesitation about speaking with Murdock's lawyer, and the AUSA told her that whether she did so was her decision, and he would cancel the meeting if she wished. This was the first time that Gross understood that it was her privilege not to talk to defense counsel, and she decided to exercise that privilege.

After the interview was cancelled, Murdock moved to dismiss the indictment, claiming that the government had interfered with his ability to interview Gross and prepare his defense. The District Court conducted a hearing, at which Gross testified, and found that Gross did not understand that she had a personal privilege to refuse to talk to defense counsel until the discussion on the Basin Allotment, and, when she learned of her privilege, she opted—for purely personal reasons—not to talk to the lawyer.

■ Murdock's first argument before us is simply a renewal of that motion for dismissal. We reject it because the Court's findings of fact are not clearly erroneous, and those facts do not support a legal conclusion that the government interfered with Murdock's access to the witness. Gross testified that she had personal reasons for refusing to speak with the defense. Murdock concedes that the AUSA never told her not to talk to his lawyer. Indeed, the only evidence before the District Court that could impugn its findings is that Gross's superiors apparently discouraged her from talking to Murdock's lawyer unless the AUSA was present, and that Phil James told Gross on the morning of the hearing, October 30, 1986, that it would not be in her best interest to talk to defense counsel. Transcript of Hearing, No. CR86–50051–01 (D.S.D. Oct. 30, 1986), at 17–20. The District Court considered this evidence in its findings:

> [I]t is unfortunate that there was a suggestion by members of the Forest Service that it would be better if she did not talk to defense counsel.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The Court does not find that the witness would have not exercised her privilege but for the conversations she had with members of the Forest Service supervisory capacity persons. So, therefore, we are in a position where had she known of her rights she would not have talked to defense counsel, even though she was influenced not to do so, which was without full knowledge of her right to refuse.

*Id.* at 23–25. Since the Court found that Gross exercised her privilege to refuse the interview once she understood it, and that choice was not influenced by her supervisors, there was no interference by the government with Murdock's access to the witness. See *United States v. Bittner*, 728 F.2d 1038, 1041–42 (8th Cir.1984). Before

Gross understood her privilege, there evidently was some confusion among the Forest Service employees on what she should do; but, in view of her later definite, personal decision, it is apparent that she would not have spoken with defense counsel on October 15, 1986, if she had understood her privilege then. In other words, any discouragement she discerned from her superiors was not the cause for her refusal to talk to Murdock's lawyer. It is thus unnecessary even to discuss whether dismissal of the indictment would have been an appropriate sanction if there had been any governmental misconduct that actually affected Murdock's lawyer's efforts to prepare for trial.

Murdock's second argument is that the Court erred by excluding his evidence that Gross had trespassed on his land and by refusing to instruct the jury on that theory. We have read the transcript, and it is apparent that the District Court's evidentiary ruling did not sweep so broadly as Murdock claims. Early in the trial, the Court met with counsel in chambers when it became apparent that Murdock was relying on a trespass theory as a defense to the charge. There the Court expressed doubts about the legal validity of the defense, and it made statements to the effect that trespass was irrelevant to the case and no evidence would be admitted on the issue. The Court even stated, "As a matter of law I am going to rule she wasn't [acting outside the scope of her duty.]" Trial Transcript at 26. But when trial resumed, the Court did not exclude all of Murdock's trespass evidence, nor did it rule as a matter of law that

Gross was carrying out her official duties. The Court admitted Murdock's evidence of the location of his property line, where the jeep was parked, and where the events occurred in relation to the boundary line of the private land. The only evidence excluded was the legal conclusion that Gross was in trespass, and evidence that was duplicative or strayed too far afield from the incident giving rise to the prosecution.

■ This evidence was properly excluded. The issue before the jury was whether Murdock violated 18 U.S.C. § 111. One element of the prosecution under this federal statute is that Gross was engaged in the performance of her official duties at the time of the altercation. On this issue it was appropriate to admit the evidence relating to where the events occurred in relation to Murdock's boundary line, for this was relevant to whether Gross was performing her duties. If the jury had decided that Gross made an unprivileged entry onto Murdock's land, it could have found that she was not performing her duties and was thus outside the protection of the statute. See *United States v. Lopez*, 710 F.2d 1071, 1074 (5th Cir.1983). All of the competent, noncumulative, material evidence offered by Murdock on this issue was admitted.

■ Nor was there any error in the jury instructions. The Court instructed the jury on the issue on which Murdock was entitled to an instruction—whether Gross was performing her duties.[2] Submitting an in-

---

**2.** Instruction No. 9 read in part:

[T]he phrase "while engaged in or [on] account of the performance of his official duties" means simply acting within the scope of what that person is employed to do and the test is whether the person is acting within that area of responsibility.
Designated Record, at 24.
Instruction No. 10 provided:
[S]hould you find that [Gross] was on a frolic of her own and not acting in her official capacity, that is, in the scope of her employment, then you should find the defendant not guilty of the charge as contained in the indictment.
*Id.* at 25.
Instruction No. 12 stated in part:

[T]here has been evidence tending to show that [Gross] may have gone on the land of [Murdock] against the consent of [Murdock]. Should you find this to be a fact it would not provide legal justification for the defendant to forcibly resist ... and interfere with ... Gross when she was engaged in the performance of her official duties, should you find she was so engaged.
... [T]he fact that [Gross] may have gone on the land of [Murdock] would not provide justification for [Murdock] to go on the land of the Forest Service for the purpose of forcibly resisting ... and interfering with ... Gross.
*Id.* at 27.

struction on trespass as a separate legal issue would only have confused the case.

Affirmed.