**FEDERAL TRADE COMMISSION,**
**Plaintiff,**

v.

**MEDICOR, LLC, et al., Defendants.**

**No. CIV.01–1896 CBM.**

United States District Court,
C.D. California,
Western Division.

July 18, 2002.

John D. Jacobs, Fed. Trade Com'n, Los Angeles, CA, Frank M. Gorman, Stephen Gurwitz, Patricia Poss, James W. Beane, Peter Lamberton, Fed. Trade Com'n, Washington, DC, for plaintiff.

Timothy J. Harris, Charlston Revich & Chamberlin, Los Angeles, CA, for defendants.

Byron Z. Moldo, Los Angeles, CA, for receiver.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MARSHALL, District Judge.

The matter before the Court, the Honorable Consuelo B. Marshall, United States District Judge presiding, is Plaintiff Federal Trade Commission's ("FTC") Motion for Summary Judgment (docket # 203). Counsel appeared before the Court on June 17, 2002, Defendant Matthew Rubin appearing in pro per. Defendant Andrew Rubin did not appear. Upon consideration of the papers and arguments presented, the Court GRANTS Plaintiff's Motion for Summary Judgment.

### JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345 and 15 U.S.C. § 53(b). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

### BACKGROUND AND PROCEDURAL HISTORY

The FTC brought this action under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act") to obtain injunctive relief, rescission of contracts, restitution, disgorgement and other equitable relief against Defendants Medicor LLC ("Medicor"), Andrew Rubin, and Matthew Rubin. Medicor sells an electronic claims processing package for approximately $359.00 to customers who wish to work from home part or full time submitting medical bills from doctors to benefits programs such as Medicare and Medicaid.

The FTC alleges that Medicor made material misrepresentations to consumers about the amount of potential income they could earn, arranging for consumers to work with doctors, and Medicor's refund policy. On April 12, 2001, this Court granted a preliminary injunction and asset freeze as to Medicor and Andrew Rubin, and appointed Byron Z. Moldo as permanent receiver for Medicor.

Plaintiff filed a Motion for Summary Judgment as to Defendants Andrew Rubin, Matthew Rubin, and Medicor.[1] Defendants Andrew and Matthew Rubin filed an Opposition. Plaintiff filed a Reply.

## DISCUSSION

### I. Evidentiary Objections

Plaintiff and Defendants filed evidentiary objections.

#### A. Defendants' Objections

Defendants' objections to the Deposition of Nami Bahrami ("Bahrami Depo.") at 1548:7–17, 1558:2–25, 1617:2–20, 1628:11–17, and 1629:6–18 as hearsay are OVERRULED. Defendants' objections to the Bahrami Depo. at 1562:12–18, 1584:1–22, 1721:6–17 as inadmissible lay opinion are OVERRULED.

Defendants object to the Bahrami Depo. at 1561:14–25 as hearsay. In this portion of the deposition, Bahrami states that 110 people successfully became medical billers using Medicor's software, based on a statement by Brian Demorest. Plaintiff argues Demorest's statement to Bahrami is a nonhearsay admission because Demorest was

an agent of Medicor speaking within the scope of his employment during the existence of the relationship. Plaintiff has not shown that Demorest made the statement during the course of his employment. Therefore, Defendants' objection is SUSTAINED. Bahrami further states that he was personally aware of ten customers who had successfully become medical billers. Defendants' objection is OVERRULED as to this portion of Bahrami's testimony.

Defendants object to the Bahrami Depo. at 1598:11–28 [2] as hearsay. Bahrami's testimony is that Demorest told him to create a document that would describe a new procedure for handling requests for refunds to reduce the number of refunds being issued. Demorest was the Director of Medicor's Customer Service Department, and the statement was made in the course of his employment. The statement is admissible as a nonhearsay admission. Therefore, Defendants' objection is OVERRULED.

Defendants object to the Bahrami Depo. at 1625:7–1626:13 as hearsay. Defendants' objection is OVERRULED as to Matthew Rubin's statement because it is a nonhearsay admission and SUSTAINED as to Mark Haining's statements.

Defendants' objections to the Deposition of Tina Stern ("Stern Depo.") at 1776:3–6, 1776:16–21, and 1853:1–11 as hearsay are SUSTAINED.

Defendants' objection to the Deposition of Brian Demorest ("Demorest Depo.") at

---

**1.** Defendant Medicor was served with the complaint in this action and failed to answer or otherwise respond. Default was entered by the Clerk of Court as to Defendant Medicor on April 30, 2001. The Receiver was served with the present Motion on behalf of Defendant Medicor, and stated in a declaration that he did not oppose the entry of summary judgment as to Defendant Medicor. The Court deems the present Motion as a request to enter judgment against Defendant Medicor, and finds that the evidence presented shows that the FTC is entitled to the relief sought as to Defendant Medicor.

**2.** The Court assumes that Defendants are referring to lines 11–25 because page 1598 contains only 25 lines.

1934:1–25 as irrelevant is OVERRULED. Defendants' objections to the Demorest Depo. at 1976:1–11 as hearsay, speculation, lacking foundation, and non-responsive are SUSTAINED. Defendants' objection to the Demorest Depo. at 1979:8–17 as hearsay is OVERRULED.

Defendants object to the Demorest Depo. at 2044:5–15 as hearsay. The objection is OVERRULED, and the statements are admissible as nonhearsay admissions to the extent the statements show that Medicor had knowledge of the customer complaints.

Defendants objections to the Deposition of Elli Sabeti ("Sabeti Depo.") at 2886:11–12 as non-responsive and lacking foundation are SUSTAINED.

### B. Plaintiff's Objections

Plaintiff objects to paragraph 5 of the Declaration of Margaret Simmons ("Simmons Decl.") on the ground that there is no foundation for her statement that Matthew Rubin had no hiring or firing authority and had no involvement with the company's marketing or advertising. Plaintiff also objects on the ground that Simmons is not competent to testify regarding Medicor's operations prior to May 1, 2000 because she was not employed by Medicor at that time. Plaintiff's objections are SUSTAINED.[3]

Plaintiff conditionally objects to Andrew Rubin's reliance on his employment contract in Plaintiff's Exhibit 49 at 1333–35 if the Court determines that the Requests for Admissions are not deemed admitted. This objection is MOOT because Plaintiff's Requests for Admissions have been deemed admitted. Plaintiff's objection to the portions of the Declaration of Danielle

Goldey ("Goldey Decl.") containing statements made by Haining to Goldey is OVERRULED.

## II. Motion for Summary Judgment

### A. Standard of Law

Summary judgment against a party is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is *entitled to a judgment as a matter of law.*" FED.R.CIV.P. 56(c) (emphasis added). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v.*

---

**3.** Simmons can testify to items based on her observations during her time at Medicor. Because her declaration does not describe her duties and responsibilities as Controller of Medicor, the Court cannot determine which of the remaining portions of her declaration are within her personal knowledge. Therefore, the Court does not consider the portions of her testimony that are not based upon on her observations during her time at Medicor.

*Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). The evidence presented by the parties must be admissible. FED.R.CIV.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

## B. Analysis

### 1. Self–Incrimination

Plaintiff argues that it served Requests for Admissions upon Defendants, and that their failure to respond results in admission of the matters requested. Plaintiff further argues that the Court should draw an adverse inference from Defendants invocation of the Fifth Amendment right against self-incrimination during their depositions. Defendants argue that Plaintiff filed no motion to deem the requests for admission admitted and that no adverse inference should be drawn from the exercise of the right against self-incrimination because they were targets of a criminal investigation.

■ Failure to timely respond to requests for admissions results in automatic admission of the matters requested. SCHWARZER, TASHIMA & WAGSTAFFE, FED.CIV. PROC. BEFORE TRIAL at ¶¶ 811–12 (2002). No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self executing. *See id.* at ¶ 812.

"Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof." *SEC v. Colello,* 139 F.3d 674, 675 (9th Cir.1998). There must, however, be evidence in addition to the adverse inference to support a court's ruling. *See id.* at 678. Defendants cited authority supports the proposition that Defendants' silence may not lead "directly and without more to the conclusion of guilt or liability." *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 391 (7th Cir.1995); *see also Doe v. Glanzer,* 232 F.3d 1258, 1264 (9th Cir.2000) ("[A]n adverse inference can be drawn when silence is countered by *independent evidence* of the fact being questioned...").

The Court's ruling on Plaintiff's Motion for Summary Judgment rests on the evidence presented by the parties, not on any adverse inference. For the purpose of deciding this Motion, the only deemed admission upon which the Court relies is the authenticity of the employment agreement between Andrew Rubin and Medicor.

### 2. Medicor's Deceptive Acts and Practices

■ Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). An act or practice is deceptive under Section 5 if (1) there is a representation, omission or practice; (2) which is likely to mislead consumers acting reasonably under the circumstances; and (3) is material to the consumer. *FTC v. Pantron I Corp.,* 33 F.3d 1088, 1095 (9th Cir. 1994) (adopting the FTC's articulation of the deception standard). First, Plaintiff argues that Medicor misrepresented that Medicor would arrange for consumers to receive medical billing work from doctors. Second, Plaintiff argues that it was highly unlikely that a consumer would ever make the earnings claimed by Medicor's advertisements and telemarketers. Third, Plaintiff argues that Medicor misrepresented its refund policy and refused to pay refunds to many consumers.

■ Defendants argue that Medicor's advertising and sales were not deceptive or misleading because the advertisements stated that "results may vary." Although Defendants have not presented any evi-

dence supporting their contention, assuming that their advertisements did include such language, the advertisements are still misleading because consumers could reasonably believe that the statements of earnings potential represent typical or average earnings. *See FTC v. Febre,* No. 94 C 3625, 1996 WL 396117 at *2 (N.D.Ill. July 3, 1996), *aff'd other grounds,* 128 F.3d 530 (7th Cir.1997) (stating that where the advertisements did not guarantee the stated level of earnings but made express claims regarding the earnings potential, the earnings claims were still deceptive); *FTC v. Arlington Press, Inc.,* No. CV–98–9260, 1999 U.S.Dist. Lexis 2055 at *11 (C.D.Cal. January 18, 1999). Plaintiff provides uncontroverted evidence showing that advertisements contained earning potentials of $20,000 to $45,000 per year and that telemarketers told consumers that they could make $20 to $40 per hour or $300 to $600 per week, at a rate of approximately $3 per claim processed. Plaintiff also provides uncontroverted evidence that from 1999 to March 1, 2001, Medicor sold its medical billing software to approximately 40,420 consumers. In addition, Plaintiff provides uncontroverted evidence that, as of February 2001, Medicor had 64 people who had actually processed one medical claim and the total number of claims processed by Medicor customers was 2,641. Thus, the evidence indicates that the vast majority of consumers did not earn the amount represented as the earning potential.

■ Next, Defendants argue that triable issues of fact exist regarding whether Medicor's refund policy was deceptive or misleading. Plaintiff presents evidence from consumers indicating that they had been told that they could obtain refunds of the purchase price if they were not satisfied with the software, and that once they tried to obtain the refunds, they were told that they could not have refunds. Defendants present deposition testimony from Brian Demorest, the Director of Medicor's Customer Service Department, stating that he tried to improve the refund policy to ensure that consumers who requested refunds were able to obtain them. Taking Defendants' evidence in the light most favorable to the Defendants, Demorest did not begin working at Medicor until it had already been operating for a year, and even if every consumer who requested a refund received one after Demorest revamped the refund policy, Defendants' evidence does not create a dispute regarding whether consumers were deceived regarding the refund policy prior to Demorest's employment at Medicor.

■ Defendants further argue that triable issues of fact exist as to the frequency of alleged misleading representations, citing to testimony from Stern, a telesales representative at Medicor, stating that she did not guarantee consumers that they would have a doctor for whom to bill. Defendants' evidence does not contradict Plaintiff's evidence that some representatives other than Stern led consumers to believe that they were guaranteed a doctor.

Defendants also argue that a triable issue of fact exists as to whether sales people were fired for making misrepresentations. That sales people may have been fired for making misrepresentations does not controvert Plaintiff's evidence showing that misrepresentations were made by Medicor's agents and that Medicor's scripts and advertisements contained misrepresentations. Therefore, whether sales people were fired for making misrepresentations is not a material fact.

Based on the foregoing, the Court finds that Defendants have not raised a genuine issue of material fact regarding whether Medicor engaged in deceptive practices under Section 5 of the FTC Act.

### 3. Individual Liability

To enjoin an individual defendant from engaging in wrongful conduct, the FTC must show that the individual participated directly in the wrongful practices or acts, or that the individual had authority to control the corporation. *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir.1997); *FTC v. Am. Standard Credit Sys., Inc.*, 874 F.Supp. 1080, 1089 (C.D.Cal.1994). Authority to control the corporation can be evidenced by active involvement in business affairs. *American Standard*, 874 F.Supp. at 1089. An individual may be held liable for monetary redress of consumer injury under the FTC Act if the FTC also shows that the individual had knowledge of the deception. *FTC v. Affordable Media*, 179 F.3d 1228, 1234 (9th Cir.1999); *Publishing Clearing House*, 104 F.3d at 1171. The knowledge requirement is satisfied by establishing actual knowledge, reckless indifference to the truth or falsity of the representations, or an awareness of a high probability of fraud coupled with intentional avoidance of truth. *Pantron I Corp.*, 33 F.3d at 1103.

### a. Matthew Rubin

Plaintiff presents the following evidence to support its contention that Matthew Rubin should be held liable:

Matthew Rubin shared an office with Andrew Rubin at Medicor, and had discussions and meetings regarding Medicor business with Medicor employees. Medicor's Controller occasionally faxed cash flow statements to Matthew Rubin. Matthew Rubin was involved in negotiating Medicor's distribution agreement with the maker of the software sold by Medicor. Matthew Rubin was involved in staffing decisions at Medicor, interviewing potential employees, salary negotiations, and the hiring and firing of Medicor employees. Matthew Rubin assisted in establishing procedures used by Medicor's Customer Service Department. Medicor employees told Matthew Rubin about telemarketers who received frequent complaints from consumers for making misrepresentations. Matthew Rubin was present in the Customer Service and Sales Departments of Medicor. He received $1,162,000 from Medicor, either directly or through the S & M Trust. Plaintiff's evidence indicates that, although Matthew Rubin may have had the title of "consultant," he was very active in Medicor's operations. He had the authority to formulate and implement Medicor's policies and procedures and had knowledge of Medicor's deceptive policies and practices.

Defendants cite to testimony of Medicor's Controller, Margaret Simmons, stating that her work was reviewed by Andrew Rubin, that wire transfers of money required authorization and verification from Andrew Rubin, that Matthew Rubin did not receive checks for consulting services on a frequent basis, that Simmons never discussed Medicor's financial information with Matthew Rubin, that she occasionally faxed cash flow statements to Matthew Rubin, and that Matthew Rubin did not attend employee or management meetings attended by Simmons.

Defendants next present testimony from Brian Demorest, Director of Medicor's Customer Service Department, stating that Matthew Rubin described himself as a consultant or adviser to Medicor, not an officer or owner. Demorest further states that the three heads of the company were Mark Haining, Dan Rogress, and Andrew Rubin. Defendants also cite to a declaration from Marcus Ballin, a telesales representative for Medicor, who states that Matthew Rubin was not a manager of Medicor and that Ballin "did not understand" that Matthew Rubin had any ability to control or direct Medicor's operations, personnel, or advertising or marketing ac-

tivities. Defendants cite also to the Declaration of Brian Baumhor, who states that he worked as a telesales representative for Medicor from October 16, 2000 until December 18, 2000. Baumhor states that he neither received instructions from Matthew Rubin nor saw anyone else obtain instructions from him. He "did not understand" that Matthew Rubin had hiring or firing authority at Medicor, never saw Medicor documents signed by Matthew Rubin, and "never understood" that Matthew Rubin had anything to do with the management of Medicor.

To support the assertion that Matthew Rubin did not provide sales scripts to sales personnel, Defendants cite to testimony by Bahrami stating that Demorest gave Bahrami a copy of the sales script. Defendants also cite to deposition testimony from Stern that her managers on the sales floor were Mike, Mike, Will, Stan, and Leanne. Stern further testified that Mark Haining was the general manager. To support the position that Matthew Rubin did not determine which employees to hire, Defendants cite to deposition testimony of Demorest, stating that Demorest made the decision to hire Bahrami to run the Customer Service Department when Demorest was not there. Defendants present testimony from Stern stating that Cornell Hines and Haining conducted weekly sales meetings. Defendants also present testimony from Elli Sabeti, a Medicor telesales representative, stating that she never had conversations with Matthew or Andrew Rubin regarding her work.

The evidence presented by Defendants is not inconsistent with Plaintiff's evidence. It does not contradict Plaintiff's evidence regarding actions taken by Matthew Rubin.

Defendants also argue that Plaintiff's evidence that the S & M Trust, a trust of which Matthew Rubin is a beneficiary, received money from Medicor is not evidence that he was an owner of Medicor. The fact that the money was placed in a trust does not change the fact that Medicor gave the money to Matthew Rubin. Defendants next argue that Matthew Rubin was merely a consultant to Medicor. Defendants cite no authority supporting the contention that Matthew Rubin's title is determinative of, or even relevant to, whether he had the required control. *See FTC v. J.K. Publications, Inc.*, 99 F.Supp.2d 1176, 1181–82 (C.D.Cal.2000) (holding "consultant" liable because he had "ownership in and/or control over" the company).

Therefore, Defendants have not created a genuine issue of material fact with respect to Matthew Rubin's control over, and knowledge of, Medicor's deceptive practices. The Court finds that Matthew Rubin is liable for restitution and is subject to a permanent injunction.

### b. Andrew Rubin

Plaintiff presents the following evidence to show that Andrew Rubin should be held liable for Medicor's deceptive practices:

Andrew Rubin set up, operated, and was the General Manager of Medicor. Andrew Rubin had control of Medicor's bank accounts. He was involved in authorizing refunds and other financial aspects of Medicor. He was involved in negotiating the agreement with the manufacturer of the billing software sold by Medicor. He received at least $900,000 from Medicor, either directly or through monies transferred to the Maven Trust. Andrew Rubin was involved in the hiring, firing, and supervising of employees. Andrew Rubin was aware of misrepresentations made by sales representatives. Andrew Rubin had discussions with Medicor employees about refunds and sales. Andrew Rubin was aware that Medicor had received complaints from the Better Business Bureau and state Attorney Generals' offices. Andrew Rubin was also involved

in a meeting with the Nevada Department of Consumer Affairs regarding Medicor's practices.

Defendants argue that the Medicor LLC–Employment Agreement between Medicor and Andrew Rubin limited Andrew Rubin's authority to make changes to the advertising and marketing templates. Assuming as true that Andrew Rubin's authority to alter sales scripts was limited, Plaintiff's evidence shows that he had knowledge of misrepresentations made by telemarketers and authority to control Medicor, which is sufficient to hold him individually liable. Defendants next argue that persons other than Andrew Rubin were responsible for the direction and control of Medicor's operations. Defendants' evidence shows that people other than Andrew Rubin did have control over certain aspects of Medicor's business, but it does not controvert Plaintiff's evidence showing Andrew Rubin's control over the day-to-day operations of Medicor. Defendants, in addition, argue that Medicor was owned by two trusts, the Maven and S & M Trusts. Defendants argue that although the Rubins were beneficiaries, Plaintiff has provided no evidence that the Rubins had any ability to control the activities of the trusts. As discussed above with regard to Matthew Rubin, Andrew Rubin's status as a beneficiary of his asset protection trust does not controvert the evidence showing his control over the day-to-day operations of Medicor. Finally, Defendants argue that Plaintiff cannot simultaneously argue that both Andrew Rubin and Matthew Rubin controlled Medicor because "two separate people" cannot have the authority to control. Defendants cite no authority to support this proposition.

Therefore, Defendants have not created a genuine issue of material fact with respect to Andrew Rubin's control over, and knowledge of, Medicor's deceptive practices. The Court finds that Andrew Rubin

is liable for restitution and is subject to a permanent injunction.

### 4. Permanent Injunctive Relief and Restitution

Under Section 13(b) of the FTC Act, the FTC may obtain a permanent injunction and ancillary relief, including restitution, for violations of Section 5 of the FTC Act. *See Pantron I*, 33 F.3d at 1101–03. Permanent injunctive relief is appropriate when there is a "some cognizable danger of recurring violation." *FTC v. Gill*, 71 F.Supp.2d 1030, 1047 (C.D.Cal.1999). Plaintiff presents evidence of unlawful conduct by Andrew Rubin and Matthew Rubin prior to their involvement with Medicor. Plaintiff also presents evidence of possible unlawful conduct by Matthew Rubin subsequent to his involvement with Medicor. Therefore, the Court finds that the FTC is entitled to a permanent injunction.

In addition, the FTC seeks disgorgement of $16,562,364.51 from Defendants. First, Defendants object to the amount on the grounds that employee salaries, cost of product, rent, the cost of the Receiver, and other expenses have not been deducted. Second, Defendants object on the ground that the damage demand does not account for refunds. Third, Defendants argue that the amount allegedly received by the Defendants' trusts should be the measure of damages with a deduction for any amounts that were repatriated. Defendants do not support their contentions with any evidence or authority.

■ Plaintiff present the declaration of an accountant indicating that refunds, charge backs, and returns have been deducted to obtain the disgorgement amount. The amount represents Medicor's net sales. Section 13(b) of the FTC Act permits the Court to order disgorgement regardless of the amount of the defendant's profits. *See FTC v. Febre*, 128 F.3d 530,

537 (7th Cir.1997). The full amount lost by consumers is an appropriate measure of damages. *See id.* at 536. The FTC must show that its calculations reasonably approximate the amount of customers' net losses. Defendants must then show that the FTC's figures are inaccurate. *See id.* at 535. The declaration of the accountant provided by FTC indicates that its calculations reasonably approximate customers' net losses. Because Defendants have not provided any evidence in support of their arguments, they have not shown that the FTC's figures are inaccurate. Therefore, the Court holds Defendants jointly and severally liable for the disgorgement amount of $16,562,364.51.

## CONCLUSION

Based on the foregoing, the Court GRANTS the FTC's Motion for Summary Judgment as to Defendants Andrew Rubin and Matthew Rubin. Judgment will also be entered against Defendant Medicor.

**SO ORDERED.**