NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-13-1015-KiPaD |
| ) | |
| ROBERT B. MANNING and ) | Bk. No.   6:12-12466 |
| JANA D. MANNING, ) | |
| ) | Adv. No.   6:12-1149 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| LBS FINANCIAL CREDIT UNION, ) | |
| ) | |
| Appellant, ) | |
| ) | **M E M O R A N D U M**[1] |
| v. ) | |
| ) | |
| ROBERT B. MANNING; ) | |
| JANA D. MANNING, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on June 20, 2013,
at Pasadena, California

Filed - August 19, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott C. Clarkson, Bankruptcy Judge, Presiding

Appearances:   Karel Rocha, Esq. of Prenovost, Normandin, Bergh & Dawe, APC argued for appellant, LBS Financial Credit Union; Appellees Robert and Jana Manning did not appear.

Before:   KIRSCHER, PAPPAS and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appellant, LBS Financial Credit Union ("LBS"), appeals a judgment after trial determining that the debt of Robert B. Manning and Jana D. Manning ("Mannings") to LBS was not excepted from discharge under 11 U.S.C. § 523(a)(6).[2]  LBS also appeals the bankruptcy court's orders vacating the entry of default against the Mannings and denying its motion in limine.  We VACATE the bankruptcy court's judgment.  We also VACATE the order setting aside the default and REMAND with instructions that LBS be given an opportunity to be heard on the matter.  We further VACATE the order denying the motion in limine and REMAND with instructions that the bankruptcy court consider the conclusive effect of the Mannings' failure to respond to LBS's requests for admission in deciding whether LBS met its burden on the issue of willfulness.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Prepetition events**

On December 21, 2007, Mannings executed a Note, Consumer Credit Disclosure Statement and Security Agreement ("Contract") in favor of LBS, a California credit union, for the purchase of a 2007 GMC Yukon Denali, VIN #1GKFK63857J369308 ("Vehicle"), in the amount of $49,502.15.  Under the Contract, Mannings agreed to pay for the Vehicle by making monthly payments for a period of seventy-two months.  Mannings were required to obtain written consent from LBS if they intended to leave California with the Vehicle for more than thirty days.  They further agreed to not sell or lease the Vehicle until the loan had been paid in full.

_____

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

If Mannings defaulted, LBS could accelerate and demand payment of the unpaid balance (including collection costs and attorney's fees) or repossess the Vehicle. At some point thereafter, Mannings moved to Texas without informing LBS.

In August 2010, Mannings defaulted on the Contract by failing to make the monthly payments. LBS's demands for further payment or return of the Vehicle were unsuccessful.

On January 13, 2011, LBS filed a complaint in the California state court against Mannings, alleging claims for breach of contract and civil conversion. LBS sought return of the Vehicle and the balance owing under the Contract of $34,223.11, plus accruing late charges, interest and contractual attorney's fees and costs. Mannings failed to respond to the complaint. On May 26, 2011, the state court entered a default judgment against Mannings in the amount of $38,008.66 (including $2,472.13 in attorney's fees) plus interest and ordered that they return the Vehicle to LBS.

## B.   Postpetition events

Mannings, having moved back to California from Texas, filed a chapter 7 bankruptcy case on January 31, 2012. On April 26, 2012, LBS filed a complaint against Mannings seeking to except its debt from discharge under §§ 523(a)(4) and (a)(6).[3] To support its claim under § 523(a)(6), LBS alleged that after Mannings had defaulted on the Contract, they, with willful and malicious intent to injure LBS and its personal property, intentionally absconded

---

[3] LBS ultimately dropped its claim under § 523(a)(4) after the bankruptcy court informed LBS that its claim for embezzlement lacked merit. LBS does not appeal this issue.

with the Vehicle and/or otherwise disposed of it to the detriment of LBS. LBS further alleged that Mannings knew or should have known that their failure to pay LBS the amount due and owing on the Contract or to return the Vehicle to LBS was substantially certain to cause injury to LBS. As a result of Mannings' willful and malicious conduct, LBS alleged that it suffered nondischargeable damages of not less than $38,008.06.

Mannings were served with the summons and the adversary complaint on May 1, 2012. An answer or other responsive pleading was to be filed by May 29, 2012. As with the state court complaint, Mannings failed to respond to the adversary complaint. On June 22, 2012, LBS requested the entry of a clerk's default, which was entered on July 2, 2012.

After the entry of Mannings' default, the bankruptcy court held a status conference on July 18, 2012. LBS did not appear, but Mannings did. We do not have a transcript from the hearing, but the court's tentative ruling for that date states:

> The Court noted that Default was entered on 7/02/12 [Dk. 9]. This matter is continued to October 17, 2012 at 1:30 p.m. Plaintiff is to file a motion for default judgment by no later than August 3, 2012. Appearances excused.

On July 25, 2012, the bankruptcy court entered an order vacating the entry of Mannings' default and giving them until July 24, 2012, to file a response to the adversary complaint. A continued status conference was scheduled for September 5, 2012.

Pursuant to the order vacating the entry of default, Mr. Manning, pro se, timely filed a two-page narrative response to the adversary complaint on July 23, 2012. Mrs. Manning's name does not appear on the response and she did not sign it.

-4-

According to Mr. Manning, he and his wife had moved to Texas to find employment after losing his job of 32 years with an annual salary of $140,000 and their home in California. Meanwhile, Mannings were unable to make the Vehicle payments, so they entered into an agreement with a Texas couple named "Tina and Chris" to take over the payments on the condition that the couple obtain financing or qualify for a loan with LBS. LBS ultimately declined a loan for Tina and Chris, and the couple allegedly made no other attempts to obtain financing or did not make any further payments to Mannings. When Mannings asked the couple to return the Vehicle, they became hostile and told Mannings that they would hide the Vehicle where Mannings would be unable to find it. Mr. Manning claimed that authorities in both Texas and California were contacted about the "stolen" Vehicle. He further alleged that LBS knew Tina and Chris had the Vehicle somewhere in Terrell, Texas, yet LBS had made no attempts to recover it. Mr. Manning asserted that even though he was listed as the Vehicle's registered owner, he felt no responsibility for recovering the Vehicle for LBS.

On September 5, 2012, LBS filed a motion for reconsideration of the order vacating the Mannings' default. Specifically, LBS, which did not appear on July 18 due to the court's indication in the tentative ruling excusing appearances, contended that it was prejudiced by the order because it was not given an opportunity to brief or be heard on the issue of Mannings' request to vacate the default, which they had apparently made orally at the July 18 status conference. LBS argued that Mannings should have been required to set forth in writing the "good cause" they had shown for vacating the default so that LBS could respond. LBS argued it

-5-

was further prejudiced because it had incurred costs in preparing the request for default and the court-ordered motion for default judgment, which was due August 3. Mannings did not oppose the motion to reconsider.

At the continued status conference on September 5, 2012, LBS informed the bankruptcy court that it had just filed a motion to reconsider the order vacating Mannings' default, which was set for oral argument on October 3, 2012. In response, the bankruptcy court asked counsel for LBS to proceed with argument on the motion. She complied. After the bankruptcy court grilled counsel about hearing cases on the merits, warning her that LBS would never receive attorney's fees on a § 523(a)(6) conversion matter, and articulating its inclination to deny the motion to reconsider, the court told counsel that it would hear the motion as scheduled on October 3, 2012, and that it would sanction her if she failed to appear.

The bankruptcy court then asked counsel when LBS desired trial. Counsel stated that a trial in February 2013 would provide sufficient time for LBS to do discovery. Concerned about the usefulness of written discovery or deposition of the Mannings, the court suggested that counsel could inquire as to the whereabouts of the Vehicle at trial. Counsel responded that LBS was entitled to conduct pretrial discovery. The court disagreed, asking counsel under which rules LBS was entitled to do so. After further discussion, the court agreed to allow LBS to conduct discovery until November 30, 2012. Trial was scheduled for December 2012. In its discussion about discovery, the bankruptcy court stressed to Mannings the importance of cooperating with

LBS's discovery efforts, particularly the importance of complying with LBS's requests for admission, interrogatories and requests for production of documents.

After the scheduled hearing on October 3, 2012, the bankruptcy court entered an order denying LBS's motion to reconsider the order vacating the entry of Mannings' default on October 19, 2012.

On October 23, 2012, LBS served Mannings with nineteen requests for admission ("RFAs"),[4] which contained nineteen admissions. Mannings' responses to the RFAs were due on November 26, 2012. They failed to respond to them or seek an extension of time to do so.

On November 30, 2012, counsel for LBS filed a declaration informing the bankruptcy court of Mannings' failure to respond to the RFAs in accordance with Civil Rule 36(a)(3). Mannings did not respond to the declaration.

On December 12, 2012, LBS filed a motion in limine to preclude any evidence, argument, discussion or suggestion contesting issues of fact that had been deemed admitted by Mannings' failure to respond to the RFAs pursuant to Civil Rule 36. Mannings did not oppose the motion in limine.

On December 17, 2012, without a hearing, the bankruptcy court entered an order denying LBS's motion in limine because the RFAs had failed to advise Mannings, who were pro se litigants, that their failure to respond to them within thirty days would deem those matters admitted per Civil Rule 36.

---

[4] Proper service of the RFAs was never disputed.

-7-

## C.    Trial on the adversary complaint

Trial on LBS's adversary complaint proceeded on December 20, 2012. Mannings appeared at the wrong courthouse, but were ultimately connected by video. At the start, LBS expressed its disagreement with the order denying its motion in limine. In response, the bankruptcy court allowed counsel the opportunity to move for reconsideration. After hearing counsel's argument, the court denied LBS's requested relief on the basis that pro se litigants require more leeway with the rules of civil procedure:

> In this case we have a situation with pro se debtors who are not very sophisticated and I don't think we will blind side them.

Trial Tr. (Dec. 20, 2012) 6:17-19. The court then asked Mannings to review the motion in limine. While trying to locate the document in their stack of papers, the court observed that at least one of the envelopes transmitted to Mannings by LBS appeared to have not been opened.

The bankruptcy court then conducted direct examination of both Mr. and Mrs. Manning simultaneously. They admitted to signing the Contract for the Vehicle and that they had defaulted by failing to make the payments. They denied being in possession of the Vehicle, stating that it was at Chris and Tina's house in Scurry, Texas. They had no address for Chris and Tina and could not recall their last names. Mrs. Manning testified that they had given the Vehicle to Tina, who Mrs. Manning knew from working at Denny's in Texas, in March 2010 with the understanding that she would take over the payments of $850.00 per month. According to Mrs. Manning, the parties had drafted a written agreement stating that Tina would return the Vehicle to Mannings if she were more

-8-

than thirty days late on a payment, but the agreement had been lost during a move. Mrs. Manning testified that she notified LBS in September 2010 of the parties' agreement and that Tina had the Vehicle. Both Mr. and Mrs. Manning testified that Tina had made payments for the Vehicle to them for the months of April, May, June, July and August 2010, which they in turn used to pay LBS. Mrs. Manning testified that once Tina stopped making payments, Tina asked for LBS's contact information to see if she and Chris could qualify for a loan for the Vehicle. Tina contacted LBS, but its representative told Mr. Manning that Tina and Chris could not qualify for a loan. Mrs. Manning testified that Tina and Chris had stolen the Vehicle from them and LBS, and that she had tried to file three police reports for it.

John Kuecks ("Kuecks"), LBS's representative familiar with Mannings' account, testified next. Kuecks confirmed LBS's receipt of the Vehicle payments for the months of April through August 2010. Kuecks testified that Mannings had not informed LBS prior to September 2010 that they had taken the Vehicle to Texas, and that LBS had never given Mannings permission to sell or lease the Vehicle to a third party. Kuecks further testified that Tina and Chris had never contacted LBS about applying for a loan for the Vehicle, which LBS could not have approved anyway because it cannot provide loans to residents outside of California. However, after reviewing his notes regarding a September 2010 conversation with a "Tina Ditman" about her ability to keep the Vehicle, Kuecks refreshed his recollection that he must have spoken with Tina about the Vehicle at that time. Kuecks informed Tina that he could not discuss the Vehicle loan with her since she was not the

credit union member. Kuecks then read into the record an internal company note written by LBS representative and Vice President of Collections, Al Parent ("Parent"), from September 21, 2010. According to Parent's note, a "Chris Niette" had contacted him saying that he had a contract with Mannings regarding the Vehicle, that he had been making payments for the past seven months, and that Mannings had tried to take the Vehicle back, but the police refused to intervene once Chris produced the parties' written agreement. Finally, Kuecks testified that LBS made multiple attempts to repossess the Vehicle at various locations in Texas, to no avail.

Parent, LBS's next witness, confirmed Kuecks's testimony that LBS had made multiple, unsuccessful attempts to repossess the Vehicle in Texas. Parent testified that as of December 2010, the Vehicle's blue book value was $34,200.

Kuecks was then recalled to the stand and testified that, according to an internal note written by another LBS employee in January 2011, Chris had told the employee that Mr. Manning had come in the middle of the night and taken the Vehicle. According to another internal note written by a different employee in November 2010, Chris had told the employee that he no longer had the Vehicle because Mr. Manning had taken it in the night about two-and-a-half months prior, and that he had been scammed by the Mannings.

On cross-examination, Mrs. Manning admitted that the Mannings entered into an agreement with Tina and Chris without LBS's permission, and that they were not allowed to sell the Vehicle to a third party without LBS's permission. On his cross-examination,

-10-

Mr. Manning admitted the same. Mr. Manning further testified that he had "no clue" as to the whereabouts of the Vehicle, and he denied ever taking it back from Tina and Chris in the middle of the night. He admitted that LBS had made attempts to recover the Vehicle.

A witness for Mannings, Walter Gene Kinal, testified that Mannings had an agreement with Tina and Chris regarding the Vehicle, and that Mannings were not in possession of the Vehicle when he helped them move back to California from Texas.

After LBS and Mrs. Manning presented their closing arguments, the bankruptcy court announced its oral ruling in favor of the Mannings. The court determined that LBS had proven malice, but the debt could not be excepted from discharge under § 523(a)(6) because Mannings had not intended the consequence of damaging LBS by selling the Vehicle to a third party; their intent of that act was to get LBS paid.

The bankruptcy court entered a judgment in favor of Mannings on December 28, 2012 ("Judgment"). LBS timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in setting aside the entry of default without notice to LBS?

2. Did the bankruptcy court abuse its discretion in denying the motion in limine and sua sponte withdrawing the admissions?

3. Did the bankruptcy court err when it entered the Judgment in favor of Mannings on LBS's claim under § 523(a)(6)?

-11-

# IV. STANDARDS OF REVIEW

Whether a particular procedure comports with basic requirements of due process is a question of law we review de novo. Garner v. Shier (In re Garner), 246 B.R. 617, 619 (9th Cir. BAP 2000).

A decision on a motion to set aside an entry of default is reviewed for an abuse of discretion. Educ. Credit Mgmt. Corp. v. Bernal (In re Bernal), 223 B.R. 542, 546 (9th Cir. BAP 1998) (citing O'Connor v. Nev., 27 F.3d 357, 364 (9th Cir. 1994)).

The bankruptcy court's evidentiary rulings are reviewed for abuse of discretion. Latman v. Burdette, 366 F.3d 774, 786 (9th Cir. 2004). See also United States v. Geston, 299 F.3d 1130, 1138 (9th Cir. 2002)(trial court's ruling on motion in limine reviewed for abuse of discretion); 999 v. C.I.T. Corp., 776 F.2d 866, 869 (9th Cir. 1995)(we review the district court's decision to permit the withdrawal or amendment of an admission for abuse of discretion). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

In reviewing a bankruptcy court's discharge determination, we review its findings of fact for clear error and conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009). A factual finding is clearly erroneous if it is illogical, implausible or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010)(citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009)(en banc)).

-12-

# V. DISCUSSION

**A.    The bankruptcy court erred by not allowing LBS a meaningful opportunity to oppose setting aside Mannings' default.**

LBS appeals the order vacating Mannings' default entered on July 25, 2012, contending that it was prejudiced because Mannings were allowed to present an opposition they would not have been allowed to present had the default remained in place.[5]

In general, the effect of an entry of default, if not set aside, is to establish the liability of the defaulting party as a basis for default judgment. 10 MOORE'S FEDERAL PRACTICE § 55.32[1][a] (3d ed. 2007). After defaulting, the defaulted party has no right to dispute the issue of liability. Id. See Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)(default by defendants establishes liability but not the extent of damages). Under Civil Rule 55(c), incorporated by Rule 7055, an entry of default may be set aside for "good cause."

At the status conference on July 18, 2012, Mannings either made an oral motion to set aside the entry of default or the bankruptcy court raised the issue sua sponte. See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 351 (9th Cir. 1999)(trial court can sua sponte set aside a default judgment under Civil Rule 60(b)). LBS did not appear at that hearing

---

[5] Generally, a trial court's grant of a motion to set aside a default is not an appealable final order because it opens the door to a trial on the merits. Joseph v. Office of Consulate Gen. of Nigeria, 830 F.2d 1018, 1028 (9th Cir. 1987). However, such orders become final and appealable once a judgment is entered. United States v. 475 Martin Lane, 545 F.3d 1134, 1141 (9th Cir. 2008) (under the merger rule interlocutory orders entered prior to the judgment merge into the judgment and may be challenged on appeal). Hence, the order at issue became final and appealable on December 28, 2012.

-13-

because, according to the court's tentative ruling, appearances were excused. The tentative ruling also instructed LBS to file a motion for default judgment. Thus, nothing in the July 18 tentative ruling indicated that the hearing was to be anything other than a pretrial conference. LBS had no notice that a motion to set aside the default would be considered, much less granted.

According to its order entered on July 25, 2012, the bankruptcy court stated its reasons for setting aside the default "on the record." Unfortunately, LBS did not include a copy of the transcript in the record for our review. If a bankruptcy court's findings of fact and conclusions of law are made orally on the record, a transcript of those findings is mandatory for the Panel's appellate review. McCarthy v. Prince (In re McCarthy), 230 B.R. 414, 416 (9th Cir. BAP 1999). Without the required transcript, which precludes our ability to review what "good cause" Mannings may (or may not) have demonstrated to support the bankruptcy court's decision, we may summarily affirm its ruling. Ehrenberg v. Cal. State Univ., Fullerton Found. (In re Beachport Entm't), 396 F.3d 1083, 1087-88 (9th Cir. 2005); Morrissey v. Stuteville (In re Morrissey), 349 F.3d 1187, 1189 (9th Cir. 2003) (failure to provide a critical transcript may result in summary affirmance).

Nevertheless, even without the required transcript, we conclude that the bankruptcy court erred. Despite the broad discretion afforded a court in setting aside defaults, and the strong policy favoring resolution of disputes on their merits, the bankruptcy court violated LBS's procedural due process rights when it considered Mannings' oral motion (or its own) to set aside the

-14-

default at the status conference and entered an order vacating the entry of default without giving LBS adequate notice and a meaningful opportunity to be heard. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976)("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."). Procedural due process must be afforded to LBS or fundamental fairness is lacking. We likewise conclude that the hearing on LBS's motion to reconsider did not cure the due process deficiencies arising from the absence of prior notice of the order vacating the entry of default.

Accordingly, we VACATE the order setting aside the default and REMAND so LBS may have an appropriate opportunity to be heard on this matter.

**B.   The bankruptcy court abused its discretion when it denied LBS's motion in limine and sua sponte withdrew the admissions.**

LBS appeals the order denying its motion in limine, contending that the bankruptcy court abused its discretion by withdrawing the admissions when Mannings failed to request such relief, and that it further abused its discretion by imposing a requirement in Civil Rule 36 that a party must inform pro se litigants about the consequences of their failure to respond to requests for admission.[6]

Civil Rule 36, made applicable in adversary proceedings by Rule 7036, permits a party to serve on any other party a written

---

[6] As with the order vacating the entry of default, the order denying LBS's motion in limine was an interlocutory order that merged into the final Judgment. 475 Martin Lane, 545 F.3d at 1141.

-15-

request to admit the truth of any matters within the scope of Rule 26(b)(1) set forth in the request relating to statements or opinions of fact or the application of law to fact. Civil Rule 36(a)(1); <u>Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n</u>, 465 F.3d 1102, 1111 (9th Cir. 2006). In short, "[t]he purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." <u>Asea, Inc. v. S. Pac. Transp. Co.</u>, 669 F.2d 1242, 1245 (9th Cir. 1982). "Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured an admission, and the purpose of the rule is defeated." Advisory Committee Notes, at 48 F.R.D. 487, 534 (1970).

Civil Rule 36(a)(3) provides that a party's failure to timely respond to a request for admission within thirty days of being served results in the admission being conclusively deemed admitted. <u>Conlon v. United States</u>, 474 F.3d 616, 621 (9th Cir. 2007). Mannings' responses to the RFAs were due on November 26, 2012. They failed to respond. The bankruptcy court observed at trial that Mannings brought to trial at least one unopened envelope. As noted above, Mannings have shown a propensity to ignore legal deadlines and judicial pleadings. As a result of Mannings' failure to answer the RFAs, the facts set forth in the requests became admitted facts.

The operation of Civil Rule 36(a)(3) is automatic and self-executing. <u>F.T.C. v. Medicor LLC</u>, 217 F.Supp.2d 1048, 1053 (C.D. Cal. 2002)("No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self-executing.")

-16-

(citing Schwarzer, Tashima & Wagstaffe, CAL. PRACTICE GUIDE: FED. CIV. PROC. BEFORE TRIAL, at ¶¶ 811-12 (Rutter Group 2002)). Thus, whether LBS even had to file a motion in limine to effectuate the deemed admissions is questionable. However, even if it did, the bankruptcy court abused its discretion in denying the motion because Mannings never moved to withdraw or amend their admissions, and the court could not withdraw the admissions for them sua sponte.

Although treating a request for admission that is not timely disputed as a conclusively deemed admission is mandatory and does not require court action, in the exercise of its discretion, a trial court may allow an admission to be withdrawn, but only under statutorily prescribed rules. Asea, 669 F.2d at 1248. Civil Rule 36(b) gives the court discretion to allow the moving party to withdraw or amend its admission if two conditions are met: (1) if such withdrawal or amendment would facilitate determination of the action on its merits; and (2) if the court is not persuaded that the adverse party would be prejudiced by the withdrawal or amendment. See Conlon, 474 F.3d at 621. The moving party must show that the withdrawal or amendment will facilitate a determination on the merits, whereas the adverse party has the burden of proof to show prejudice. Id. at 621-22.

Mannings never sought relief from their admissions either by written motion or oral request. Even after the court admonished them for not responding to the RFAs, they offered no excuse for failing to respond. They also never opposed LBS's declaration of no response or its motion in limine. Nonetheless, the bankruptcy court essentially withdrew the admissions sua sponte when it

-17-

denied the motion in limine and allowed Mannings to testify at trial about the admitted facts. This was an abuse of discretion. See Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crook, P.C., 930 F.2d 1117, 1120 (5th Cir. 1991)(holding that district court abused its discretion in sua sponte withdrawing admissions without proper motion by affected party); Layton, 2008 WL 1734191, at *1 (citing Am. Auto. Ass'n and concluding same).

Even if the bankruptcy court could sua sponte withdraw the admissions, it abused its discretion by imposing a notice requirement not found within Civil Rule 36 or required by Ninth Circuit law. The court denied the motion in limine because the RFAs failed to advise Mannings, who are pro se litigants, that their failure to respond within thirty days would deem the matters admitted, citing Medina v. Donahoe, 854 F.Supp.2d 733, 748 (N.D. Cal. 2012). While Medina may be persuasive, it is not binding on this Panel. It is also distinguishable because, in that case, the non-responding pro se plaintiff had opposed the defendant's motion for summary judgment, she had been deposed by defendant, she had responded to defendant's other discovery requests, and the entire record in the prior administrative proceeding regarding her claims was available. Id. at 749. In other words, she actively participated in the case and the defendant knew the basis of her claims.

Furthermore, while we often afford pro se litigants certain leeway, it is also true that pro se litigants "must follow the same rules of procedure that govern other litigants," King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987)(citation omitted), overruled on other grounds by Lacey v. Maricopa Cnty., 693 F.3d

-18-

896 (9th Cir. 2012), and they "should not be treated more favorably than parties with attorneys of record." <u>Jacobsen v. Filler</u>, 790 F.2d 1362, 1364 (9th Cir. 1986). "The hazards which beset a layman when he seeks to represent himself are obvious. He who proceeds pro se with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an 'advocate' for or to assist and guide the pro se layman through the trial thicket." <u>Jacobsen</u>, 790 F.2d at 1365 n.5 (quoting <u>United States v. Pinkey</u>, 548 F.2d 305 (10th Cir. 1977)).

The RFAs served on Mannings stated that they were served in accordance with "Rule 36 Federal Rules of Civil Procedure, applicable to this proceeding through Rule 7036 of the Federal Rules of Bankruptcy Procedure," and were "to be answered within (30) days of service." If Mannings had looked up either of these rules when they received the RFAs, they would have learned of the consequences of not answering or objecting to them. Civil Rule 36(a)(3). They affirmatively chose not to respond to the RFAs. Their lack of response is even more disturbing considering the bankruptcy court's repeated warnings about the importance of their complete and timely compliance with discovery requests.

Accordingly, the bankruptcy court abused its discretion when it sua sponte withdrew the admissions, denied the motion in limine, and allowed evidence at trial contrary to what Mannings had admitted in the RFAs. The result of denying the motion was particularly harsh when it was done on the eve of trial. Therefore, we VACATE the order denying the motion in limine and REMAND this matter with instructions that the bankruptcy court

-19-

consider the conclusive effect of the Mannings' failure to respond to LBS's requests for admission in deciding whether LBS met its burden on the issue of willfulness.

While the bankruptcy court certainly has discretion to determine whether each of the requests for admission is proper under Civil Rule 36(a)(1) and the effects of the admissions on the issues to be tried, it is not free to consider evidence presented at trial that contradicts those matters deemed admitted in the RFAs. Once a matter has been deemed admitted under Civil Rule 36, even by default, the court may not consider evidence that is inconsistent with the admission. See 999, 776 F.2d at 869-70.

**C. We express no opinion on the merits.**

As for its claim under § 523(a)(6), the bankruptcy court determined that LBS had proven malice, noting that causation and damages were proven, although it did not articulate specific facts to support its ruling. LBS does not appeal that ruling and, in any event, we agree. Mannings admitted to selling the Vehicle to a third party in violation of the Contract, they did it intentionally without any just cause or excuse, and LBS was injured by the loss of the payments and the Vehicle.

LBS appeals the bankruptcy court's ruling on the willfulness prong. While we must VACATE the Judgment of the bankruptcy court, because we are remanding the default and admissions matters, we need not determine whether the bankruptcy court erred.

**VI. CONCLUSION**

For these reasons, we VACATE the bankruptcy court's judgment. We also VACATE the order setting aside the default and REMAND so that LBS may have an appropriate opportunity to be heard on this

-20-

matter. We also VACATE the order denying the motion in limine and REMAND this matter with instructions that the bankruptcy court consider the conclusive effect of the Mannings' failure to respond to LBS's requests for admission in deciding whether LBS met its burden on the issue of willfulness.[7]

---

[7] In remanding this matter, we express no opinion on the underlying merits of LBS's claim or the substance of the RFAs. We note that while RFAs may properly relate to "the application of law to fact" as set forth in Civil Rule 36(a)(3), "[r]equests for admissions cannot be used to compel an admission of a conclusion of law." Playboy Enters., Inc. v. Welles, 60 F.Supp.2d 1050, 1057 (S.D. Cal. 1999); 8B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2255 (3d ed. 2012). We note, however, that should LBS be successful upon remand, it may be entitled to attorney's fees based upon controlling language in the Contract. See Fry v. Dinan (In re Dinan), 448 B.R. 775, 786 (9th Cir. BAP 2011)(noting that Cohen v. de la Cruz, 523 U.S. 213 (1998), is not limited to cases involving statutorily-based attorney's fees; it applies equally to cases in which fees are provided for by contract)(citing Redwood Theaters, Inc. v. Davison (In re Davison), 289 B.R. 716, 725 (9th Cir. BAP 2003)).